# McCandless *v.* Allegheny Bessemer Steel Co., Appellant.

*Public officer—Special compensation—Contract—Public policy.*

A doubtful matter of public policy is not sufficient to invalidate a contract. An agreement is not void on this ground unless it expressly and unquestionably contravenes public policy, and is manifestly injurious to the interests of the state.

While an agreement by a private person to pay a public officer for doing his duty is void as against public policy, it is otherwise as to matters not in the scope of the officer's public duties. But agreement to pay for such services must be special in order to bind.

*Sheriff—Expenses of special deputies in Allegheny county.*

A sheriff in Allegheny county can recover money which he actually expended in paying the per diem wages and costs of subsistence of special deputies selected by himself, without authority of the salary board, at the instance and request of defendants, for their special benefit, and upon the faith of their promise to refund the amount thus advanced.

*Illegal fees under act of March* 28, 1814.

It would be a strained construction of the penal act of March 28, 1814, to hold that a claim for money thus advanced is in any sense demanded as compensation for the officer's own service or services of his regularly authorized and appointed deputies.

*Cases as to sheriff's charges distinguished.*

Cases deciding that the sheriff is not entitled to extra charges for keepers of goods levied on, for cartage, storage, auctioneer's services, insurance, etc., do not hold that the sheriff cannot recover reasonable extra expenses incurred at the instance of interested parties and upon their promise to reimburse the officer. Many of those cases were cases in which the officer endeavored to charge such extra expenses on the fund to the prejudice of parties interested therein.

Argued Oct. 31, 1892. Appeal, No. 94, Oct T., 1892, by defendant, from judgment of C. P. No. 1, Allegheny Co., on verdict for plaintiff, Alex. Æ. McCandless. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Assumpsit, on special contract, to recover moneys alleged to have been expended by plaintiff, while sheriff, in the employment and subsistence of special deputies.

The facts appear sufficiently by the opinion of the Supreme Court and by the charge of the court, which latter was in part as follows, by SLAGLE, J.:

" The law in Allegheny county, in existence at that time, provides that the sheriff may appoint deputies after the number and salaries have been fixed by what is called the salary board of the county. It is not pretended that these men, whom I say you may allow, were appointed in accordance with that law, and, therefore, whether or not they were invested with the power of the sheriff by virtue of his deputization, they were not entitled to be paid as deputies because not appointed according to law. [Therefore, in any view of the case, in my judgment, these parties were outside of the ordinary means within the control of the sheriff, and I instruct you, for the purpose of this case, that if these men were employed, as alleged by the sheriff, at the instance of the defendants, and upon the express promise by them to pay the amount expended by him in employing and subsisting these men and providing them with the means of carrying out their duties, the plaintiff is entitled to recover.] [2]　Therefore, the only questions of fact that I see for you to determine are : Were these men employed at the instance and request of the defendants, and under a promise by them to pay their expenses ?　And, if so, is the amount charged here a reasonable and proper amount for that service ?

"I do not propose to discuss these questions; they have been fully discussed by counsel on either side, and very ably presented to you. I may say, however, that unless the evidence shows that Mr. Dickey acted under authority of the defendants, anything he said or did would not bind them. It is true it appears that he was attorney for the parties in a suit that was pending in the court of common pleas No. 2, of this county, but as a mere attorney at law he would have no right to make any such agreement as is alleged in this case, so as to bind the defendants. If they are bound by his act at all you must find that he was acting not as an attorney at law, but as an agent authorized by them to so act. [And in referring to this matter I will simply call your attention to this fact : On the part of the plaintiff it is alleged that Mr. Dickey called with Mr. E. L. Clark, the president of the Allegheny Bessemer Steel Company, and that the first conversation was had in his presence ; that he then said, in the presence of Mr. Clark, that the expenses incident to this mode of pro-

ceeding would be paid by the Allegheny Bessemer Steel Company, and after that was done it was desired by the sheriff that he have notice in writing, which was drawn up and presented. Dr. McCandless testifies positively that this conversation was had in the presence of Mr. Clark, and if that was so, if Mr. Dickey in his presence, speaking for them, made this promise, then the defendants would be bound by it, because they could not at any subsequent time dispute his authority.] [3] If they permitted him in their presence to make this application and did not then and there repudiate it, they could not, after the services were performed, repudiate it ; and, therefore, if you believe that Mr. Dickey made this promise to Dr. McCandless in the presence of Mr. Clark, the president of the company, they would be bound by his acts."

The court refused binding instructions for defendant, and left the case with the jury subject to the reserved point quoted in the opinion of the Supreme Court. Verdict for plaintiff for $4,248.95. The court subsequently entered judgment for plaintiff on the reserved point, in an opinion by SLAGLE, J.

· *Errors assigned* were (1) refusal of binding instructions for defendant ; (2, 3) charge in brackets as above ; (4) reserving question of law ; (5) entering judgment on question of law reserved, quoting the instructions respectively.

*Johns McCleave*, for appellant.—No special contract was established ; or, if sufficiently proved, it is illegal and void : Act of March 28, 1814, 1 Purd. § 29, 798 ; Bussier v. Pray, 7 S. & R. 447 ; Overholtzer v. McMichael, 10 Pa. 139. It was so held of watchman's wages : Leeds' Case, 8 Phila. 353 ; Graham v. Machine Co., 35 Leg. Int. 70 ; Patton's Est., 2 Pars. 103 ; Deal v. Tower, 1 Phila. 268 ; Miles v. Huber, 1 Clark 483.

The alleged contract is without consideration : Acts of May 31, 1841, P. L. 417, and March 20, 1849, P. L. 184 ; Wimer v. Worth Township, 104 Pa. 320 ; Smith v. Whildin, 10 Pa. 39 ; and contrary to public policy and void : Bridge v. Cage, Cro. Jac., 103 ; Hatch v. Mann, 15 Wend. 44.

*D. F. Patterson* and *R. B. Petty*, for appellee.—The evidence as to the special contract was clear. The appellee is entitled to the benefit of the fact so found by the jury : Maynes

v. Atwater, 88 Pa. 496; Miller v. Bealer, 100 Pa. 585; Mc-
Grann v. R. R., 111 Pa. 171; Jones v. Bland, 116 Pa. 190.

The sheriff is not demanding any fee or compensation for
his services. He incurred an expense which neither law nor
duty required of him. He is entitled to recover such expense
from the party who requested that it be incurred and who
promised to pay for it: Fitch's Ap., 10 Pa. 461; Grabb's Ap.,
14 Pitts. L. J. (N. S.) 241; T. & H. Pr. § 1107; Allegheny
Co. v. Watts, 3 Pa. 465; 7 Wait's A. & Def. 91–2; Raush v.
Ward, 44 Pa. 389; Murfree on Sheriffs, §§ 1077, 1084, 1089;
Crofut v. Brandt, 58 N. Y. 106; Maginn v. Rosenthal, 62 How.
Pr. 504; Brown v. Cooper, 65 How. Pr. 126; Murtagh v. Con-
ner, 15 Hun, 488; Trundle v. Riley, 157 B. Mon. 396; Warner
v. Grann, 14 Minn. 439; England v. Davidson, 39 E. C. L.
234.

OPINION BY MR. JUSTICE STERRETT, January 3, 1893:

In 1889, plaintiff was sheriff of Allegheny county, and de-
fendants were proprietors of the Bessemer Steel Works at
Duquesne on the Monongahela river, several miles above Pitts-
burgh. In April of that year, a strike, inaugurated by defen-
dants' employees, resulted in stoppage of the works, consider-
able disorder in the vicinity thereof, threats of violence, etc.
In company with their attorney, some of the defendants called
on the sheriff, informed him of the threatening condition of
affairs and requested him to protect their property and pre-
serve the peace. At his instance, a written notice was pre-
pared and served on him in accordance with the act of May 31,
1841, extended to Allegheny county by the act of March 20,
1849, P. L. 184. As the result of this, the sheriff employed
and armed special deputies, placed them in charge of the prop-
erty, paid them for their services and furnished them with
subsistence, all at his own expense. He also sent up to defen-
dants' works some of his regular deputies.

All the facts and circumstances, relating to the plaintiff's
claim, are so fully stated in the opinion of the court below that
further reference thereto, in this connection, is unnecessary.

He claimed that the employment of the special deputies and
payments for their respective services and subsistence, were at
the special request of defendants and upon their express prom-

ise to refund the several sums of money thus expended by him; and this suit was brought to recover the same.

On the trial, the main issue of fact was as to the alleged promise of defendants. The evidence on that subject was amply sufficient to justify the submission of the question to the jury. That was done with entire fairness. Calling attention of the jury to the subject, the learned trial judge said: " The only questions of fact that I see for you to determine are, were these men employed at the instance and request of the defendants and under a promise by them to pay their expenses? And, if so, is the amount charged here a reasonable and proper amount for that service?" Then, after referring to the testimony relating to the alleged contract, he instructed the jury thus: " You will take all the testimony together and say whether or not you believe that contract was made. If you do not believe the contract was made, that is an end of the case, and your verdict should be for the defendants. If you find that the original contract was not made as alleged by the plaintiff, then you may consider the testimony as to the amount of subsistence furnished these men. You will remember that testimony: that Mr. Clark said the sheriff told him that the men were there, and there was no place for them to stay, and that they must have something to eat; and that he told him to go to some place and procure lodgings and provisions. Whether that applied to the whole of the subsistence, or a part, and what part, is for you. Even if you should find that there was no contract originally as to the employment of these men, it seems to me that the circumstances would justify you in considering the question whether or not Mr. Clark did not agree that the subsistence should be paid. If so, you can then find for the subsistence alone, or such portion of it as you believe he agreed to pay."

The verdict was in favor of plaintiff for the amount paid by him for services of the special deputies and their subsistence, excluding, by express direction of the court, the item for services of persons who, at the time, were regular deputies in the sheriff's office,—and of course, it is predicated of the finding of fact by the jury, that the contract was made as alleged by plaintiff. It was also rendered subject to the question of law reserved, viz:

"Whether or not the plaintiff is entitled in law to recover for services of persons employed at the special instance and request of the defendants and upon their promise to pay,—to perform the service of watchmen or guards in a case of apprehended trouble during the strike."

That question was afterwards considered in connection with defendants' motion for new trial, and, having been decided in favor of plaintiff, judgment was entered in his favor for the amount found by the jury.

The positions assumed by appellants, under their specifications of error, are:

1st. That there is not sufficient evidence of a special contract between the parties, such as was claimed by the plaintiff and found by the jury.

2d. That said alleged contract, if sufficiently proved, is illegal and void, because (a) it is in conflict with the provisions of the 26th section of the act, March 28, 1814, 1 Purd. 798; (b) it is without consideration, and (c) it is contrary to public policy.

If either of these positions be correct, the judgment must, of course, be reversed.

As to the first, we have already intimated that the evidence was quite sufficient to warrant the court in submitting to the jury the question whether or not there was a special contract, such as was alleged by the plaintiff. Without referring specially to the testimony bearing on that subject, it cannot be doubted that there was an abundance of evidence tending to prove the contract as claimed by plaintiff. Its preponderance in his favor is so decided that the jury could have little if any difficulty in finding as they did. The answers of one of the defendants, to a few categorical questions put to him on cross-examination, indicate that there was some understanding as to the payment of the special deputies and their subsistence; and, to that extent at least, they are corroborative of the plaintiffs' evidence. Mr. Clark was asked: "Was it not very well understood by you that the men sent up there by the sheriff, were to be paid by you, and the expenses paid by you?" His answer was: "Well, I believed we would pay something; that was my idea. Q. Wasn't it your understanding that the company would pay the expenses of the subsistence of these men

and transportation? A. I said in regard to that point,—I told the sheriff we would do that. As to the question of what amount would be paid, I felt we would be called upon to pay something. I always felt so. There was no understanding with any officers on that subject, nor did we talk it over."

Referring to the interview with the sheriff, in which he complained of the insufficiency of the protection afforded, Mr. Park was asked: "Was the term or word expenses used, and, if so, in what connection? A. Well, during this interview I said that the concern was a wealthy institution, and they were determined at any expense to stop that trouble, meaning, of course, our own expense, and expenses incident to loss of trade and all such things as that." Afterwards, on cross-examination, the same witness said he had no understanding that the sheriff was paying personally for the services and subsistence of the special deputies or not; "That had not been talked of or thought of." "Q. What was your impression? A. I don't know that I had any impression about it; it was a thing I hadn't thought of, nor had I talked of it with the sheriff or anybody else."

The evidence was all for the jury. It was their special province to consider and weigh it, and determine the fact as to whether there was or was not a contract as claimed by plaintiff. That has been definitively settled by their verdict, and is no longer an open question. There was no error in submitting that question to them, or in taking their verdict subject to the question of law reserved.

The contract having been thus established, the next question is, whether it is illegal and void under the act of 1814, above referred to, or for any other reason. That act, as was said in Overholtzer v. McMichael, 10 Pa. 139, "gives the penalty in three classes of cases: 1st. Where the officer takes greater or other fees than those limited by the law, for any recognized service done by him; 2d. Where he takes fees, though not beyond the legal limit, for a recognized service not actually performed; 3d. Where he takes a fee for any pretended service or services not provided for by the act. Between these classes there is an obvious difference. The first two, being clearly defined by the statute, admit of description with legal precision; and this the language of the act seems to require, as is pointed

out in the case cited. But the last class prohibits every non-enumerated service as a basis of compensation, without any attempt at specification, which, indeed, would be wholly impracticable. The language of the statute, in effect is : ' for every service here particularized as the subject of fees, you shall be paid a certain sum ; but beyond this you are prohibited from receiving anything.' The prohibition is sweeping and general, and the offence, thus constituted, consists in exacting pay where none is allowed by law. It matters not what the nature of the pretended service may be, it is still extortion without color of right."

If the subject-matter of the contract in this case is within the purview of the act referred to, and the act of March 31, 1876, passed for the purpose of carrying into effect sec. 5 of article 14 of the constitution, relating to the compensation of county officers, etc., it is clear the plaintiff has no standing in court, because the contract is necessarily illegal and void ; but, as was correctly said by the court below, the plaintiff is not demanding fees, nor any compensation for his own services, and the verdict does not include any charge for services of the deputies regularly appointed under the act of 1876. The entire claim is for the pay and subsistence of extra men employed, by him, of his own motion, and not authorized by the salary board, as provided by the seventh section of the act of 1876.

It is quite true the sheriff is demanding money for himself ; but it is equally true that he is not demanding it as compensation for his own services, or for the services of his regularly appointed deputies, authorized by the act of 1876 ; nor in fact is it for anything of the kind. He is demanding it as money which he actually expended, as the jury has found, in paying and subsisting special deputies selected by himself, without authority of the salary board, at the instance and request of the defendants, for their special benefit, and upon the faith of their promise to refund the amount thus advanced. It would be a strained construction of a penal act to hold that a claim for money thus advanced is in any sense demanded as compensation for plaintiff's own services or services of his regurlarly authorized and appointed deputies. No such element as that entered into the composition of the verdict.

If, for any reason, however, the contract in question was

illegal or contrary to public policy, the defendants have a perfect right to resist payment on that ground, notwithstanding they enjoyed all the benefit of it.    While the law which forbids the enforcement of such contracts has a higher mission to perform than to aid those who are disposed to repudiate their obligations, it necessarily follows that the latter may invoke its assistance whenever it suits their purpose.    As was said by Lord MANSFIELD, in Holman v. Johnson, 1 Cowp. 341, 343 : " The objection that a contract is immoral or illegal as between plaintiff and defendant sounds at all times very ill in the mouth of the defendant.    It is not for his sake, however, that the objection is ever allowed, but it is founded in general principles of policy, which the defendant has the advantage of, contrary to the real justice as between him and the plaintiff, by accident, if I may say so.    The principle of public policy is this : *ex dolo malo non oritur actio."*

The act of 1841, above referred to, making the county liable for property destroyed " in consequence of any mob or riot," provides that no person shall be entitled to the benefit of the act, unless, among other things, " it be made to appear that he or they, upon the knowledge had of the intention or attempt to destroy his or their property, or to collect a mob for such purpose, and sufficient time intervening, give notice thereof to a constable, alderman or justice of the peace of the ward, borough or township in which such property may be situated, or to the sheriff of the said county; and it shall be the duty of the said sheriff, . . . . upon the receipt of such notice, to take all legal means to protect said property so attacked, or threatened to be attacked, and if the sheriff, . . . . upon the receipt of such notice or upon knowledge of such attack or intended riot or disturbance, shall neglect or refuse to perform his duties in the premises, he or they so neglecting or refusing shall be liable for the damages done to such property, . . . . and shall be deemed guilty of a misdemeanor in office : " etc., P. L. 417.

It was shown by undisputed evidence that the disorder and lawlessness complained of by defendants was of a serious and alarming character; crowds congregated about their works, threatening and actually committing deeds of violence, and even firing into the buildings on their ground.    The situation was entirely beyond the control of any peace officer of the township,

or any other officer of lower rank than the sheriff of the county. It was therefore his duty when notified, "to take all legal means" to preserve the peace and prevent the destruction of property. If this could be done by the ordinary but necessarily limited force, under his control, viz.: the regular deputies authorized by the salary board under the act of 1876, it was his duty to use them. If that force was insufficient, it was his duty to employ all other legal means necessary to effect the purpose; and, according to Curtis v. Allegheny County, 1 Phila. 237, the only legal means within his control was the posse comitatus. This he did not attempt to use, but for some reason, not clearly appearing, it was arranged that he should employ the special deputies above mentioned.

As to the kind of protection desired, Mr. Park testified: "I wanted the sheriff to send deputies there who would give us the same protection that we receive from the usual policemen on the streets in the city."

In the case last cited, the then sheriff of the county, in circumstances somewhat similar to those of the present case, employed and paid armed military companies to prevent threatened destruction of property, etc. The learned district court, in a well considered opinion, held that the means thus resorted to were not within the meaning of the expression, "all legal means," which, by the words of the act, the sheriff is required to take in discharging his official duty; that while it was not *unlawful*, but, on the contrary, entirely *lawful* for him to do so, he was not required, in the line of his duty, to employ armed military forces. In the language of the learned judge: "To say that the sheriff was bound to use all lawful means to prevent the threatened destruction of property, is to say that he must use all the means that are not unlawful; and this would include all those physical and moral means which might be adapted to the occasion, whether pointed out by the law or not,—means which are not properly official, and which cannot reasonably be exacted of public officers. To declare him liable for damages, and guilty of a misdemeanor in office for not adopting unofficial means, would be an anomaly not readily to be assented to, and we can hardly suppose that this is the meaning of the law."

"The sheriff is required to take all 'legal means' to pre-

vent the injury, and there is a clear differential distinction between the words 'legal' and 'lawful;' and the former is used in the law with reference to this distinction. It imports a much more limited range of means than is implied by the word 'lawful,' and imposes a much less onerous duty upon the officers named."

"When the law requires an officer to take all legal means to effect an object, it intends that he shall take all such means as he may officially use, and he is not chargeable with neglect of duty, if he adopts the means prescribed by the law for such occasions, though he may omit other plain physical and moral means. These may be *lawful*, because not forbidden; but they are not *legal* means, because not prescribed by law as means to be used by him in his office. He is not liable except for neglect of official duty; that is, for not using those means which the law puts in his hands by his official investiture."

Referring to the means with which the sheriff is thus invested by the law, it is said, in the same connection, that at common law he has authority to raise the power of the county, armed if he thinks proper. He may demand the attendance of any number of armed citizens to aid him in his duty. When necessary, it is his duty to command and theirs to obey.

It follows from what has been said that the means resorted to by the sheriff in this case, so far as the employment, payment and subsistence of the special deputies are concerned, were outside the strict line of his official duty, in that he was not required by the law to adopt them, and would not have been chargeable with neglect of duty if he had refused to employ them; but while the means referred to were not prescribed by law, or required to be used by him in the proper discharge of his official duties, they were not unlawful, and he had a right to avail himself of them on terms which did not involve anything in the shape of compensation for his own services or those of his regularly appointed deputies.

From this, in connection with the fact, established by the verdict, that defendants entered into the contract for their own protection and benefit, it also follows that there is no merit in the alleged want of consideration for said contract. It is not even pretended that the contract was not carried out in

good faith on the part of the plaintiff, or that the defendants did not reap the fruits thereof.

In addition to the special grounds of illegality, already noticed, defendants further contend that the contract should not be enforced, because, on general principles, it is contrary to public policy. In support of this, it is said that if the law sanctions such contracts, "It will soon become impossible for any citizen to demand the enforcement of any duty on the part of the sheriff, unless he comes with gold in his hands;" . . . . "that if the sheriff is permitted to act as the hired agent of one faction concerned in a public disorder, his office stands in imminent danger of being prostituted to the service of the party who pays, and his character as chief executive of impartial law is utterly destroyed," etc.

While there is force in the suggestions, thus strongly presented in the vigorous language of the learned counsel for defendants, they are predicated in part, at least, of a state of facts materially different from those of the case under consideration.

In the first place, it does not appear that defendants demanded anything that was not granted them by the sheriff. On the contrary, as we have seen, they requested him to send to their works special deputies, who, in the language of Mr. Park, would give them the same protection that is "received from the usual policemen on the streets in the city." In explanation of this he said: "In the city, people are not allowed to congregate, make a noise, stand on the corners and interrupt and annoy passers-by, and stop people from going into stores," etc. . . . "That is what I wanted. . . . I wanted that town kept in the same peaceable condition that it was before the strike." The same witness also testified that, on several occasions, the special deputies, at their request, acted as guards in escorting the defendant's men from the city up to the mills; that the police and guard duty, performed by those deputies, continued about six weeks. This indicates the character of the protection defendants demanded, received and agreed to pay the cost of. As we have seen, such services as these are not strictly within the line of the official duties of the sheriff, or of his regularly authorized deputies; nor was it ever contemplated that the posse comitatus should be called out

for such protracted service of the kind demanded by the defendants.

The plaintiff was not, as suggested, the paid agent of defendants. His services, in employing and directing the special deputies, are not embraced in the verdict. It contains no such element, but is made up entirely of the per diem wages of the special deputies and actual cost of their subsistence paid by plaintiff,—the sum total of which merely reimburses him for cash items actually expended on the faith of defendant's promise. There appears to be nothing unlawful, or savoring of corruption in that.

No one can doubt either the soundness or the importance of the rule that any contract to pay a public officer for doing his duty when he is required to do it without such payment, or to pay him a greater sum than contemplated by the laws of the government which he is serving, is void. It is recognized in every text book on the subject and in numerous adjudicated cases: Greenhood on Public Policy, 328; Pollock on Contracts, §§ 233, 283, etc.; Chitty on Cont. § 664; Wharton on Contracts, § 502. In the first two of these will be found a classification of contracts contrary to the policy of the law, and authorities applicable to each.

If a contract is clearly void, as against the policy of the law, it will neither be enforced in a court of law, nor relieved against in equity; but, " A doubtful matter of public policy is not sufficient to invalidate a contract. An agreement is not void on this ground unless it *expressly* and *unquestionably* contravenes public policy, and be *manifestly* injurious to the *interests of the state:* " Chitty, ed. 1844, supra. In this connection, the remarks of Sir George Jessel, in Printing Co. v. Sampson, 19 Eq. 462, 465, are worthy of note: " It must not be forgotten that you are not to extend arbitrarily those rules which say that a given contract is void, as being against public policy, because if there is one thing more than another public policy requires, it is that men of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts, when entered into freely and voluntarily, shall be held sacred and shall be enforced by courts of justice. Therefore you have this paramount policy to consider,—that you are not lightly to interfere with this freedom of contract."

Referring to the recognized principle above stated, that an agreement, by a private person to pay a public officer for doing his duty, is void, as being against public policy, one of the learned authors above cited says : " It is otherwise, however, as to matters not in the scope of the officer's public duties. . . . Hence a constable, or other peace officer, may be remunerated for specal attentions not in the line of his employment. But agreement to pay for such services must be special in order to bind: " Whart. on Cont. § 502. To the same effect are Murfree on Sheriffs, §§ 1077, 1084, 1089 ; Warner v. Grace, 14 Minn. 487 ; Trundle v. Riley, 17 B. Mon. Ky. 396 ; England v. Davidson, 39 Eng. Com. Law, 254.

In the last case, defendant offered a reward for information which would lead to the conviction of a felon. That information was furnished by the plaintiff, who was a constable and police officer in the district where the felony was committed. Lord DENMAN, C. J., said: " I think there may be services which the constable is not bound to render, and which he may therefore make the ground of a contract. We should not hold a contract to be against the policy of the law, unless the grounds for so doing are very clear. "

Trundle v. Riley, supra, was the case of a prisoner who, being continuously sick while in custody, promised the jailer that if he would give him his personal attention, instead of devoting his extra time to his business as a blacksmith, he would pay him twice as much as he could make. The promise was held valid, because the contract was for services outside the ordinary duties of the jailer.

In that case, it was contended that judicial approval of such contracts would be productive of evil consequences. Replying thereto, the court said : " The whole argument amounts to little more than this ; that the right of the appellee in this action should not be allowed, because the same right may be abused and prostituted by others similarly situated, and thus become the instrument of oppression and fraud ;—an argument we need not undertake to refute."

Cases have been cited to the point that the sheriff is not entitled to extra charges for keepers of goods levied on, for cartage, storage, auctioneer's services, insurance, etc. It will appear, on examination, that many of these were cases in which

the officer endeavored to charge such extra expenses on the fund, to the prejudice of parties interested therein. It was held he could not do this; but, that line of cases does not hold that such reasonable extra expenses, incurred at the instance of interested parties upon their promise to reimburse the officer, cannot be collected by him from the promissors.

Without further elaboration, we are of opinion that the contract found by the jury was neither illegal nor void for any of the reasons suggested by defendants, and that there was no error in entering judgment in favor of the plaintiff on the question of law reserved.

Judgment affirmed.