## Werner, Appellant, *v.* Hillman Coal & Coke Co. et al., Appellants.

Argued March 18, 1930. Before FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.

*Chas. H. Ealy,* with him *E. O. Kooser, Charles F. Uhl, Thos. Watson* and *R. M. Steffler,* for appellant.—The charge is entirely at variance with any schedule of fees ever adopted by stenographers and clerks for such services and the same was never contemplated by the legislature in the Act of 1868, or permitted thereunder.

A fee bill providing for compensation for a public officer should be construed strictly in favor of the public and against the officeholder: Rothrock v. School Dist., 133 Pa. 487; Clover Val., etc., Co. v. Lamb, 187 Pac. 723; McCandles v. Steel Co., 152 Pa. 139; Shields v. Coal & Coke Co., 239 Pa. 233.

*Walter E. Glass,* with him *James B. Landis* and *William A. McGuire,* for appellee.—Where fees or salaries are established for the services of public officers, the policy of the law forbids special contracts as to compensation between them and the public: Irwin v. Co., 1 S. & R. 505; Lancaster Co. v. Fulton, 129 Pa. 48; Shields v. Coal & Coke Co., 239 Pa. 233; Hunter v. Nolf, 71 Pa. 282; Pittsburgh v. Goshorn, 230 Pa. 212.

The fees of the appellee, as prothonotary of the Court of Common Pleas of Somerset County, at the time the services sued for were rendered, were fixed by section 3 of the Act of April 2, 1868, P. L. 3, 2 Purd. 1646.

A copy is a transcript or double of an original document: Fox's App., 112 Pa. 337; Wagner Free Institute of Science's App., 116 Pa. 555; Com. v. Curry, 4 Pa. Superior Ct. 356; Naturalization Fees, 15 Pa. C. C. R. 225.

OPINION BY MR. JUSTICE SIMPSON, April 21, 1930:

As this case must go back for a rehearing, we will consider only the questions which will necessarily arise at that time, assuming the parties will promptly amend their pleadings so that the other unsubstantial matters, elaborately argued on this appeal, will disappear from the picture. The important facts are as follows:

Plaintiff, who had been prothonotary of the Court of Common Pleas of Somerset County, filed a bill in equity against nine corporations, which had acted together as the unincorporated Somerset County Coal Operators' Association, and also against one J. S. Brennan, who was secretary of the association but not a member, seek-

ing to recover a sum of money alleged to be due for copies of certain records and papers in the prothonotary's office, ordered by Brennan and delivered to him for the other defendants. The court below decided that five copies had been ordered, and that plaintiff caused them to be made on a typewriter at one and the same time, four of them being carbon manifolds of the original. The claim was to recover, under the Fee Bill of April 2, 1868, P. L. 3, the sum of two cents for every ten words in each of the copies; that is, ten cents for each ten words struck off on the typewriter at the one time it was used. Defendants averred that plaintiff miscalculated the number of words; that the work was done under a contract for a specified sum which had been fully paid; and that the statute justified a recovery for the original copy only. Plaintiff denied making the contract alleged; said he told Brennan that payment would have to be made in accordance with the fee bill; and further claimed that, even if such a contract had been made, it would have been against public policy and void. In his adjudication, the chancellor sustained all of plaintiff's contentions; but, in reviewing the exceptions filed by defendants, he held that their testimony was correct, so far as concerned the number of words in the five copies, and entered a final decree on that basis. From it, both sides have appealed.

Despite plaintiff's extended argument to the contrary, we can see no reason why the chancellor, on a review of the case, could not change his mind regarding a disputed question of fact. He was the only judicial officer who saw the witnesses, and who, for that reason, was best able to judge of the weight to be given to their testimony: Clarkson v. Crawford, 285 Pa. 299, 303; Robb v. Stone, 296 Pa. 482. It would be a sad commentary on our system of jurisprudence, if the court's "sober second thought" could not be sustained because it differed from his earlier conclusion. Indeed, one of the principal reasons for requiring the adjudication to be reviewed, if

exceptions are filed to it, is that the chancellor may change it, if convinced his prior findings, whether of fact or law, were erroneous.

We are satisfied that the court below was correct in refusing to determine whether or not plaintiff and Brennan agreed as to the amount to be paid, if the former made the copies desired. In Irwin v. Northumberland Co., 1 S. & R. 505, the sheriff sought to recover a sum for services not referred to in the fee bill. We denied his right, saying (page 506) : "although in the usual transactions of life, when one man performs service for another, at his request, the law implies a promise to pay as much money as they are reasonably worth, yet there is a very imperfect analogy between those services and such as are performed by public officers. As to the latter, in most cases, the compensation is fixed by positive law, nor is it in the power of the party to employ any other than the officer to whom the law has committed the performance of the service. If the fixed compensation is more than the service is worth, the party must pay it; if less, the officer must be content with it; neither can resort to any other rule than the written law. It falls to the lot of almost every man to require the services of public officers. It is of very great importance, therefore, that every man should know what he has to pay; for if it is left to the parties to agree upon the compensation, a door is opened for perpetual litigation, and there is great danger of oppression to the lower and more ignorant people. It is for this reason, that a table of fees has been established, which every officer is enjoined to exhibit to public view in his office."

This case has never been questioned, is cited with approval in Lehigh Co. v. Semmel, 124 Pa. 358, 366, and is followed, in principle, in Shields v. Latrobe-Connellsville Coal & Coke Co., 239 Pa. 233. It is true these were not suits between a public officer and a citizen seeking performance of compensable services under the statute; but the principle is the same, and the language in Irvin

v. Northumberland Co., supra, is peculiarly applicable to that situation. Moreover, the exact point has not infrequently arisen elsewhere, and, on a résumé of the applicable cases, it is said in 22 R. C. L. 538, section 235: "As a general rule an agreement by a public officer to render the services required of him for less than the compensation provided by law, is void as against public policy." It is so held in Bodenhofer v. Hogan, 142 Iowa 321; and see the note thereto in 19 Am. & Eng. Ann. Cases 1073, where the cases on both sides of the question are discussed. So strictly has the rule been applied in this State that, by section 26 of the Act of March 28, 1814, P. L. 352, 364, not only is the recalcitrant officer to be punished, but it is further provided that "if the judges of any court within this Commonwealth shall allow any officer, under any pretense whatever, any fees under the denomination of compensatory fees for any services not specified in this act or some other act of assembly, it shall be considered a misdemeanor in office." The necessity for sustaining the rule in the present case will be apparent when it is recalled that the County of Somerset is entitled to one-half of the amount fixed by the Act of 1868, which moiety cannot properly be reduced save by its consent.

The second question to be considered is whether or not the court below erred in deciding that the clause in section 3 of the Fee Bill of April 2, 1868, P. L. 3, 5, which provides that "The fees to be received by the several prothonotaries of the courts of common pleas...... shall be as follows: ...... Copy of record or paper filed, for every ten words, two cents," authorizes plaintiff to recover not only two cents for every ten words actually copied, but also the same amount for each of the carbon manifolds produced at the same time, thereby allowing him ten cents for every ten words in the papers on file, though they were copied but once. This question will not be found difficult of solution, if there is steadily kept in mind that "all laws must be executed

according to the sense and meaning which they imported at the time of their passage": Com. v. Erie & North-East R. R. Co., 27 Pa. 339; Umholtz's License, 191 Pa. 177. Admittedly, at the time the Fee Bill of 1868 was passed, the typewriter, with its capacity for producing carbon manifolds, did not exist; nor did any other method of manifolding, unless, indeed, the ability to produce duplicates by the old-fashioned letter-press, be considered such a method. It is not claimed in this case, nor could it well be, that such copies were within the purview of the statute, since they are unfitted for the certification the act calls for, are difficult, often impossible to read, and are readily destructible.

Viewed according to the state of the art at the time of the passage of the statute, as it must be under the authorities last cited, the provision relied on necessarily means that, for copying a record or other paper on file, the prothonotary is entitled to receive two cents for every ten words therein; and does not mean that he is to receive two cents for every ten words in every paper he produces as the result of once copying the document on file; the determinative factor is the number of words in the record or paper copied, not the aggregate number of those in all the papers resulting from the application of modern methods in copying. If this was not so, then, using the present case as an illustration, if 100 copies had been ordered the prothonotary would have been entitled to receive, under his claim as now made, 100 times the $1,097 alleged to be due for the one copy, or $109,700 altogether, though the papers were copied but once and the duplicates obtained by modern methods, as they might readily be. So, too, if the claim under consideration is correct, the prothonotary, following methods which have become all too prevalent at the bar when printing records on appeal, could send the original papers to the printer, have the latter print as many copies as desired, and charge two cents for every ten words in each printed copy he delivered, though in fact he made

no transcription whatever. To so hold would be directly in the teeth of the statute, as well as of the opinion in Muirhead v. United States, to be more fully referred to hereafter.

There are other difficulties inherent in the position taken by plaintiff. If the word "copy" is to be given the broad meaning attributed to it by him, then the prothonotaries would be required, because of their acceptance of the office, to furnish, at the statutory rate, a copy of every paper on file, although it might be in ideographic or picture language, or in Chinese or other unusual modern language. So, also, in issues devisavit vel non where forgery is charged, or in any other proceeding where it is vitally important that the copy should be an exact reproduction of the original, every misspelling, alteration, or other defect or unusual matter appearing in the paper on file, would have to be reproduced exactly as in the original, for otherwise it would not be a copy. Doubtless the prothonotaries would be sustained in their refusal to supply such copies at the price fixed by the Act of 1868; but it would be because, although the word "copy," aside from its context, might be broad enough to cover the situation, plainly it had no such meaning in the legislative mind when the statute was passed; but so, also, it was not intended to have the meaning which, on plaintiff's argument, the court below gave to it in this case.

The exact point in issue does not seem to have been decided in any authority called to our attention, or which a careful search has disclosed; but we have found some which support it in principle. Thus, in Muirhead v. United States, 13 Ct. of Claims Rep. 251, a chief supervisor of elections claimed, under section 2031 of the revised statutes, that he was entitled to be paid 15 cents per folio for each of a large number of printed folios of instructions sent to the supervisors, because the section specified he should receive that sum for a copy of any paper on file furnished by him. It was held

(pages 255-6) that, although it was true in one sense that "each printed copy he delivered to a supervisor was, within the meaning of the law, a copy of a paper on file ......that is not enough to entitle the claimant to pay for each of them......: [because it was rather] a duplicate printed copy of an original paper issued as an original document."

In Harmon v. Territory of Oklahoma, 15 Okla. 147, a stenographer, who had taken notes of the defendant's testimony at a previous trial, was allowed to refresh his memory from a carbon manifold of the transcript of those notes. It was urged that, under the statutes of the State, a copy could not be so used; but this was overruled, because the court (page 164) did "not think a carbon copy of any longhand transcript of a stenographer's official notes, made by the stenographer himself at the time he makes the transcript and as a part of that transaction, is a copy in the sense that the word copy is ordinarily used, any more than several books or newspapers printed upon the same press at the same time and from the same type, are copies of each other." This conclusion is practically that reached by us in Cole v. Ellwood Power Co., 216 Pa. 283, and by other courts in International Harvester Co. v. Elfstrom, 101 Minn. 263, and Martin & Lanier Paint Co. v. Daniels, 27 Ga. App. 302.

Plaintiff next contends that even if we should decide the above point against him, he is entitled nevertheless to recover the two cents for every ten words in each of the manifolds, because a later provision of the act says that "the fee for services not herein specially provided, shall be the same as for similar services." This provision is inapplicable, however; it relates to the performance of similar services only, and not to the results flowing from the method of performance of a service specially provided for in the act. Conceding, as we do, that the copy for which the prothonotary is to be paid may be made on a typewriter, the services performed in

its production are not "similar services" to those in the production of the four manifolds made by the same machine at one and the same time, and hence the provision last quoted has no application here.

We agree, however, that it would be unjust to allow defendants to receive and retain, as they have done, the four manifolds without paying for them; but this does not help in construing the statute. Aside from the provisions already quoted, plaintiff has pointed to no other language of the act which could possibly embrace payment of the manifolds, and our own investigation has disclosed none. Consequently, as admittedly defendants received certain carbon manifolds, payment for them, despite some earlier decisions apparently to the contrary, must be made on the basis of a quantum meruit; that is, plaintiff is entitled to receive what is a fair and reasonable compensation for the extra expense and services in producing the carbons, without considering whether the payment to be received for the original copy is or is not adequate compensation for that work. The statute not covering manifolds thus produced, but only the original copy of the paper on file, and no special price as to the former having been agreed upon, it is a proper subject for compensation, determined in the way stated: McCandless v. Allegheny Bessemer Steel Co., 152 Pa. 139, 152; Clark v. Cook, 197 Pa. 643; Shields v. Latrobe-Connellsville Coal & Coke Co., 239 Pa. 233, 236.

The final question in the case is whether plaintiff is entitled to recover interest on the amount, if any, which is still due to him. It may be conceded that he would not if the sum due was merely costs (Galbraith v. Walker, 95 Pa. 481; Shafer v. McIlhaney, 154 Pa. 58), though, by section 8 of the Act of 1868, P. L. 3, 11, it is provided that "all fees for services to be performed under this act shall be considered due and payable to the officer in advance by the party requiring the service." But even then, as shown in the last of those cases, the

rule is otherwise where a public officer who receives costs or fees belonging to another, refuses to pay them over on demand. Here, the sum sought to be recovered is not costs, and demand made for its payment was followed by a refusal to pay, which would seem to be a sufficient reason, if the amount claimed was due and payable, to justify an allowance of interest: Cone v. Donaldson, 47 Pa. 363.

It follows that, on the retrial, plaintiff will be entitled to recover two cents for every ten words of the original copy furnished by him to defendants, plus a fair compensation, determined as above stated, for the four carbon manifolds, and plus also the statutory allowance for the certificates attached to each class of papers, less, however, the $1,400 already received by him—interest to be allowed on the excess, if any.

Perhaps we ought to say, also, that counsel should get together and determine the number of words in the original copy, and advise the trial judge of the result. He cannot be required to calculate the number himself, and ought not to be asked to decide, as between the two parties, whether there are 2,154 pages of 25 lines each with 10 words to the line, making altogether 548,500 words, as plaintiff asserts; or slightly over 2,000 pages of 22 lines each with 9 words to the line, making altogether 396,108 words, as defendants allege. Such a wide arithmetical discrepancy would seem to indicate that there was at least ignorance or unfairness on the part of one or the other or both of the witnesses who calculated the number of words.

The decree of the court below is reversed and the record is remitted that further proceedings may be had not inconsistent with this opinion, the costs to abide the event.