223 P.2d 912

VALLEY NAT. BANK OF PHOENIX v. CARROW.

No. 5268.

Supreme Court of Arizona.

Nov. 13, 1950.

88

Gust, Rosenfeld, Divelbess, Robinette & Linton, of Phoenix, for appellant.

Carl G. Krook, of Kingman, for appellee.

UDALL, Justice.

The Valley National Bank, defendant-appellant, is appealing from a judgment in the sum of $1173.75 rendered against it and in favor of Mary E. Carrow, plaintiff-appellee. The case was tried before the court sitting without a jury.

Stated in the light most favorable to a sustaining of the judgment, the facts giving rise to the instant suit are substantially as follows: defendant bank, upon being appointed by the Superior Court of Mohave County as administrator with the will annexed of the rather large estate of Edward M. Carrow, the deceased brother of plaintiff, was totally unfamiliar with the property holdings of decedent. Hence in order to secure aid in the preparation of a correct inventory of said estate, Victor H. Pulis, the bank's trust officer, contacted the plaintiff, who was then and for some 20 years prior thereto had been, the County Recorder of Mohave County, and requested that she prepare an abstract of the real and personal property holdings of the decedent. According to plaintiff's version of the matter, Pulis was advised that the regular work of the office kept plaintiff and her one deputy fully occupied during regular office hours, and it was agreed that plaintiff would prepare the abstracts as an individual working on her own time outside of office hours, and that the certificates to be attached thereto would be in her individual capacity, acknowledged before a notary public, and not in her official one as county recorder. Further evidence adduced by plaintiff was to the effect that in doing this work she had spent some 280 hours—40 days of seven hours each—and that the reasonable value thereof was $30 per day, making a total of $1200 due her (It was even suggested by plaintiff that $1800 for the services would not have been out of line.) ; that she had

magnanimously reduced the bill by $26.25 thus: " * * * giving them the best of it. I was very good to them. I cut that down. I cut that down some. I am not trying to hold them up. I could have."

None of plaintiff's three corroborating witnesses, who were more or less experienced in title matters, attempted to evaluate or put a price upon the seven abstracts admitted in evidence, but all did testify that at least $30 per day was a reasonable and customary charge for an experienced title man.

Defendant bank is being sued in its corporate capacity rather than as the administrator of the decedent's estate for the reason that it elected to have the court close the estate before the amount of this expense of administration had been judicially determined. In the probate proceedings an arbitrary sum of $250 was set aside to meet this expense and at the trial of the instant cause the bank stipulated that if any judgment was rendered for plaintiff the bank would pay it, regardless of whether it would be able to charge all of same to the decedent's estate.

The issues raised by the pleadings and tried in the lower court were (a) whether plaintiff performed the services as county recorder or in her individual capacity, and (b) the reasonable value of the services rendered. In rendering judgment for plaintiff for the full amount sued for the trial court, as the trier of fact, resolved those issues in favor of plaintiff. This appeal followed, and the same issues, under two assignments of error, are attempted to be raised in this court.

We first consider defendant bank's assignment that plaintiff, in her individual capacity, was not entitled to judgment for the reason that the services rendered comprised work required to be performed by plaintiff as county recorder under the provisions of Sec. 17-812, A.C.A.1939, which states in part, "The recorder shall, upon the application of any person and the payment of the fees therefor, make searches for all instruments recorded or filed in his office and furnish a certificate thereof, * * *."

■ We are of the opinion that by enacting this section, the legislature never intended to put the county recorder's office into the abstract business, with all its hazards, which is precisely what the instant comprehensive order called for. Rather, we construe this provision to mean that when a request is made for a copy of a certain instrument or instruments then it is the duty of the recorder to search the record for same and prepare a certified copy thereof, for which the usual statutory fee is charged. See Sec. 34-105, A.C.A.1939.

■ Had the trial court found and the record substantiated it, either (a) that the title search order had been placed by defendant and accepted by plaintiff as county recorder under the above quoted statute, and that the work was done during office hours and certified to by plaintiff in her official capacity, or (b) that plaintiff had re-

fused to do work for applicants during office hours, falsely representing that the office had a backlog of work and hence plaintiff was too busy to perform same, in order that she might "feather her own nest" by securing the work for herself, then there would be merit to defendant's contention. Unfortunately for the bank, however, the court expressly found that the parties agreed that plaintiff would prepare the abstracts as an individual outside of her regular office hours. Faced with this finding based on conflicting evidence it cannot be successfully maintained that plaintiff is obtaining money under "color of office" or as a "fee". We hold that for unofficial services rendered outside of office hours and not under color of office plaintiff may recover for the reasonable value of said services. Yuma County v. Wisener, 45 Ariz. 475, 46 P.2d 115.

The second assignment urges that the trial court erred in entering this judgment for plaintiff because the evidence, considered in the light of the general knowledge possessed by all judges, shows that the bill rendered was extortionate, and that it was the duty of the trial court to disregard plaintiff's testimony both as to the time allegedly devoted to the work as well as to the reasonable value thereof.

To support its argument that the charge made was exorbitant, defendant contends this court should consider the following matters among others: (a) while only 45 calendar days elapsed between the placing of the order and the completion of the work, plaintiff claims to have worked on the average of seven hours per day for 40 of said days, in addition to the regular office hours prescribed by law; (b) an examination of the seven abstracts which are in evidence shows that it is the work of an amateur and not that of a person skilled in title work, e. g., certain standard requirements in abstracting were not met in that no signatures or acknowledgments are shown on the instruments abstracted nor do the certificates embrace a search of the records of the tax collector's office for taxes due or of the superior court clerk's office for suits pending or judgments of record; (c) the evidence shows that in the title business the cost of an abstract is normally computed upon either a flat charge per page or per instrument, and considering the 184 pages (Letter ·size paper rather than legal size was used.) covering 150 instruments in the seven abstracts, if such rule were followed in fixing charges in the instant case the amount claimed due is excessive and unreasonable, even though the highest rate testified to were adopted; (d) the implication is made that in the amount claimed due by plaintiff was hidden a charge for other services performed for her brother during his lifetime for which she had not been compensated; (e) refuting the claim of plaintiff that searching the county records was a tremendously involved job was the testimony of the present county recorder, who demonstrated from the witness stand, that indices covering three out of the seven

abstracts could be examined and the Carrow instruments abstracted within a very short period of time; and (f) that the trial court in its memorandum opinion stated it was basing the value of plaintiff's service at a rate of $25 per day but that it ultimately entered in the judgment proper an allowance at the rate of $30 per day.

Obviously, what defendant bank is asking this appellate court to do is for us to re-try the case and substitute our judgment as the trier of fact for that of the trial court. This we cannot do. The principle of law involved is succinctly stated in the case of Tucson Rapid Transit Co. v. Rubaiz, 21 Ariz. 221, 223; 187 P. 568, 569: "We are requested to disregard all of plaintiff's testimony as unworthy of belief  *  *, and, having disregarded her testimony, to hold that there is no substantial evidence in the record to sustain the verdict and judgment. This is a request for this court to weigh the evidence of the plaintiff and to substitute our judgment of its weight for that of the trial court. This we refuse to do  *  *  *." See also Rouillier v. A. & B. Schuster Co., 18 Ariz. 175, 157 P. 976; Brandes v. Mitterling, 67 Ariz. 349, 196 P. 2d 464.

In the instant case, the evidence being conflicting, this court is bound by the judgment of the trial court.

Judgment affirmed.

LA PRADE, C. J., and STANFORD, PHELPS and DE CONCINI, JJ., concurring.