FORREST H. ANDERSON, as Attorney General of the State of Montana, Plaintiff and Respondent, *v.* EDNA J. HINMAN, as Clerk of the Supreme Court of the State of Montana, Defendant and Appellant and FRANK MURRAY and J. WARD CROSBY, as the living predecessors to the Office of the Clerk of the Supreme Court of the State of Montana, Defendants and Respondents.

No. 10151.

Submitted September 21, 1960. Decided December 13, 1960.

357 P.2d 895.

T. B. Weir, Edmond G. Toomey and Michael J. Hughes, Helena, for appellant. Michael J. Hughes argued orally.

Forrest H. Anderson, Atty. Gen., Hall, Alexander & Kuenning, Great Falls, Ralph J. Anderson, Helena, for respondents. Forrest H. Anderson, Ralph J. Anderson, and John C. Hall argued orally.

MR. JUSTICE ADAIR delivered the Opinion of the Court.

This is an appeal by the defendant, Edna J. Hinman, from a declaratory judgment rendered and entered in favor of herself and two codefendants in district court cause No. 27009, brought and tried in the District Court of the First Judicial District of the State of Montana, in and for the County of Lewis and Clark.

The action was filed on October 3, 1958. It is entitled "Forrest H. Anderson, as Attorney General of the State of Montana, Plaintiff, vs. Edna J. Hinman, as Clerk of the Supreme Court of the State of Montana; Frank Murray, and J. Ward Crosby, as the living predecessors to the office of the Clerk of the Supreme Court of the State of Montana, Defendants."

*Complaint.* The complaint contains twenty-one separately

numbered paragraphs wherein it is alleged, *inter alia:*

That at all times since January 7, 1957, to and including the time of the commencement of the action, the defendant, Edna J. Hinman, had been the duly appointed, qualified and acting Clerk of the Supreme Court of the State of Montana for a term expiring on the 5th day of January 1959; that continuously from February 18, 1924, to January 7, 1935, the defendant, J. Ward Crosby, was the duly elected, qualified and acting Clerk of said Supreme Court; that continuously from December 11, 1942, to January 7, 1957, the defendant, Frank Murray, was the duly elected, qualified and acting Clerk of said Supreme Court;

That during the above-mentioned periods of time and during the term of office of the defendants each furnished to the West Publishing Company, a corporation, an unauthenticated and uncertified copy of each opinion pronounced by the Supreme Court, and for such service each defendant was compensated in the form of checks drawn by West Publishing Company and payable to the defendant's order, such compensation being based upon an agreed rate of twenty-five cents per opinion copy page; that such arrangement between West Publishing Company and the various Clerks of the Supreme Court of the State of Montana has been in effect since the first publication of the reports of Montana cases by the West Publishing Company covering a period of over seventy-five (75) years; that such payments were made to all the Clerks of the Supreme Court of the State of Montana during that entire period of time.

The following named have held the office of Clerk of the Supreme Court of the State of Montana, viz.: William J. Kennedy (1889-1893); Benjamin Webster (1893-1899); Henry G. Richerts (1899-1904); John T. Athey (1905-1915); James T. Carroll (June 17, 1915-1923); Dana M. Easton (1923-1924); J. Ward Crosby (Feb. 18, 1924-Jan. 7, 1935); Arthur G. Porter (1935-1942); Peter T. Rigg (Jan. 28, 1942-Dec. 11, 1942);

Frank Murray (Dec. 11, 1942-Jan. 7, 1957); Edna J. Hinman (Jan. 7, 1957-Jan. 5, 1959); Thomas J. Kearney (Jan. 5, 1959-————).

The Attorney General's complaint further alleged: That the receipt and use of such payments by the various Clerks of the Supreme Court was known to and approved by the Supreme Court of the State of Montana; that since January 7, 1957, the defendant, Edna J. Hinman, has received compensation from the West Publishing Company for the services so performed for it and that of the compensation so received she has remitted an amount of money to the State Treasury equal to a rate of twenty-five cents per opinion copy page.

In paragraph XVI of his complaint, the plaintiff, Attorney General, alleged: That as to the services rendered and compensation received by the defendant, Edna J. Hinman, the plaintiff, Attorney General, believes and therefore alleges:

(a) That the making and issuance of uncertified and unauthenticated copies of the opinions of the Supreme Court of Montana for the use and benefit of the West Publishing Company is one of the official duties of the Clerk of the Supreme Court as provided by section 82-504, R.C.M. 1947;

(b) That for issuing such copies the clerk is required by R.C.M. 1947, § 82-503, to collect in advance a fee of fifteen cents per folio;

(c) That in her settlement with the State Auditor the defendant, Edna J. Hinman, is responsible and must account for, and in her settlement with the State Auditor must be charged with an amount of money equal to fifteen cents (15¢) per folio for each of such opinions made and issued during the term for which the defendant has been appointed:

(d) That it is the duty of the plaintiff, Attorney General, to make demand upon the defendant, Edna J. Hinman, for the payment of the above fees on behalf of the State of Montana, and if necessary to proceed against the defendant Hin-

man and require that she make payment thereof into the State Treasury.

In paragraph XVII of his complaint, the plaintiff, Attorney General, alleged: That a justiciable controversy exists between the plaintiff, Attorney General, and the defendant, Edna J. Hinman, in that the defendant Hinman disagrees with the beliefs and allegations of the plaintiff, Attorney General, set forth in paragraphs (a) through (d) above, and in opposing said beliefs and allegations the defendant Hinman contends:

(1) That the issuance of uncertified and unauthenticated copies of the Court's opinions for the use of the West Publishing Company is not one of the official duties of the Clerk as provided by R.C.M.1947, § 82-504;

(2) That for the issuance of the copies of the opinions the Clerk is not required to collect in advance from the West Publishing Company the fee prescribed by R.C.M.1947, § 82-503, but may charge a fee of twenty-five cents per page for such service;

(3) That for the issuance of the copies of the opinions the Clerk is not responsible and need not account for an amount of money equal to fifteen cents per folio for each opinion issued, but only for an amount equal to twenty-five cents per page for each copy;

(4) That the plaintiff, as Attorney General, can make no claim on behalf of the State against the defendant Hinman for payment of the difference between the amount of money collected by the defendant Hinman for said service and the amount of money prescribed for such service by R.C.M.1947, § 82-503, nor proceed against the defendant Hinman to require that she make payment thereof into the State Treasury.

In paragraph XVIII of his complaint the plaintiff, Attorney General, alleged: That during the time they served as Clerk of the Supreme Court the defendants, Frank Murray and J. Ward Crosby, paid no part of any compensation so received by them into the State Treasury but that all the compensation

received by them for such services was retained by said defendants and appropriated to their own personal use.

In paragraphs XIX and XX of his complaint, the plaintiff, Attorney General, makes the same averments as to the defendants Murray and Crosby that are pleaded in paragraphs XVI and XVII, supra, of the complaint as to the defendant Hinman.

In paragraph XXI of his complaint the plaintiff prays to have determined his status as Attorney General with regard to:

(1) The matter of the performance of the duties of the Clerk of the Supreme Court; and

(2) Any demand, claim or action through which he may proceed against the defendants, Edna J. Hinman, Frank Murray, and J. Ward Crosby, so that all rights of the people of Montana may be fully exercised and protected.

*Prayer.* The plaintiff, Attorney General, concludes his complaint with a prayer that:

(1) Process issue directing that the defendants appear and plead to his complaint;

(2) A declaratory judgment be entered declaring that:

(a) The Clerk of the Supreme Court must collect in advance, a fee of fifteen cents per folio for the issuance to the West Publishing Company of copies of this Court's opinions;

(b) The defendants are accountable for and must pay into the State Treasury the amount of fifteen cents per folio for all copies of opinions of this Court which have been issued by them to West Publishing Company during the period which each served as Clerk of the Supreme Court;

(c) That plaintiff, as Attorney General, be authorized to bring any action necessary for the recovery of those fees which are collectible by the Clerk of the Supreme Court for the issuance of the copies of opinions to the West Publishing Company.

*Demurrers.* On October 21, 1958, the defendants, J. Ward Crosby and Frank Murray, appeared in the action by each serv-

ing and filing a separate general demurrer wherein each urged that the complaint did not state facts sufficient to state a cause of action against either of said demurring defendants.

On October 22, 1958, the defendant, Edna J. Hinman, appeared in the action by serving and filing an elaborate special demurrer containing eight separately numbered paragraphs setting up multiple claimed uncertainties, ambiguities and defects as to the parties litigant urging:

(1)    Defect of party plaintiff contending that the State of Montana is the only proper party plaintiff;

(2)    Defect of parties defendant contending that the State Auditor is an indispensable party defendant and asserting that the controversy involves the performance of his duties as State Auditor;

(3)    Further defect in parties   defendant contending that West Publishing Company is an indispensable party to the action, asserting that such company was a party to the contract between it and the successive Clerks of the Supreme Court;

(4)    Uncertainty as to the allegations of paragraphs VIII and X of the complaint;

(5)    Uncertainty as to the allegations of paragraphs VII and XVII of the complaint;

(6)    Uncertainty as to whether the State Auditor charged defendants ''with the full amount of all fees chargeable for * * * alleged services rendered to the West Publishing Company'';

(7)    Uncertainty as to whether the salary of any of the defendants has been allowed or paid until the fees accruing from West Publishing Company were accounted for or paid over; and

(8)    Ambiguity for all the reasons set forth in paragraphs designated IV, V, VI and VII of such special demurrer.

*Answers.*   Without obtaining any ruling on their separate general demurrers the defendant, J. Ward Crosby, on December 9, 1958, and the defendant, Frank Murray, on December

11, 1958, each served and filed his separate answer to the Attorney General's complaint.

In their separate answers the defendants Crosby and Murray each alleged: That after the Supreme Court's opinion had been rendered and pronounced by this Court and thus had become public property that each defendant had been personally paid at the rate of twenty-five cents per opinion copy page for forwarding to the West Publishing Company copies of such pronounced opinions, and that for a period of more than seventy-five years the work so done and performed has not been considered to be nor is it any part of the official duties of the Clerk of the Supreme Court, and that such former Clerks were not required to collect fees for the copies of the opinions but that each was privileged to make such charges therefor as were agreeable to the Clerk and to the West Publishing Company, and that such Clerks were not required by law to account to the State of Montana for the money so received by the Clerk under his agreement with the West Publishing Company, and in each separate answer the former Clerks, Crosby and Murray each prayed that district court cause No. 27009 be dismissed upon the merits.

*Demurrer Denied.* On June 11, 1959, the special demurrer of the defendant, Edna J. Hinman, was overruled.

*Hinman Answer.* On June 24, 1959, being some six months after her term of office as Clerk had expired, the defendant, Edna J. Hinman, served and filed her answer wherein she took issue with many of the allegations of the Attorney General's complaint and particularly with the allegations and beliefs set forth in subdivisions (a) through (d) of paragraph XVI, supra, of the plaintiff's complaint.

The concluding paragraph designated XXI and the prayer to the defendant Hinman's answer read as follows:

"XXI. Answering Paragraph XXI of said Complaint, this answering defendant alleges that there is no present justiciable controversy existing between defendant and plaintiff arising

out of the matters set forth in plaintiff's complaint herein, and that this action should be dismissed as to this answering defendant.

"Wherefore, this answering defendant, Edna J. Hinman, prays judgment that this action be dismissed upon the merits as to her, and that she have such other and further relief as to the court may seem just and equitable, and for her costs and disbursements herein expended or incurred."

*Reply.* The Attorney General filed a reply to each answer and in his reply to the defendant Hinman's answer he denied her allegations respecting the law as set forth in paragraph XVII of her answer, and also denied her allegations in paragraph XXI, above-quoted, wherein she alleged "that there is no present justiciable controversy existing between" the Attorney General and herself.

*Motions for Judgment.* Thereafter the plaintiff Attorney General moved for judgment on the pleadings against each of the three defendants. Thereafter each defendant separately moved for judgment on the pleadings in favor of each defendant and against the Attorney General. The defendants' motions were identical, each was made upon the ground that no material issues of fact were presented or raised by the pleadings and that each defendant was entitled to judgment in his or her favor as a matter of law.

*Case Submitted.* By stipulation of all the parties litigant, all the motions were submitted on briefs and without oral argument to the District Court for Lewis and Clark County, the Honorable Victor H. Fall, District Judge presiding, for declaration, judgment and decision. On October 21, 1959, District Judge Victor H. Fall filed his written opinion in cause No. 27009, which is as follows:

"Opinion

"This is an action for declaratory judgment, the purpose of which is to decide whether the State of Montana or the several defendants, all of whom were former Clerks of the

Montana Supreme Court, are entitled to certain monies received by them during their respective tenures of office.

"The action was commenced by the filing of a complaint on October 3, 1958, alleging the existence of a controversy between the plaintiff, the Attorney General of the State of Montana, and the several defendants, and praying that this court declare the rights, if any, of the parties to the funds in question.

"After the overruling of demurrers filed by the defendants, each of the defendants answered separately, admitting the factual allegations of the complaint, denying the legal conclusions drawn by the plaintiff therefrom, and alleging certain new factual matters.

"The plaintiff replied separately to each of the several answers, admitting the facts alleged, but in turn denying the conclusions of law reached by the defendants.

"All issues of fact having been thus removed from the case, all of the parties moved for judgment on the pleadings.

"The Facts

"The facts, undisputed as they are, may be briefly summarized.

"About seventy-five years ago the West Publishing Company of St. Paul, which deals largely in legal publications, being desirous of having prompt and accurate copies of the decisions of the Montana Supreme Court, entered into an arrangement with one of the earliest occupants of the office of the Clerk of the Supreme Court designed to accomplish that purpose. The exact details of that transaction in territorial times have not survived, but they were doubtless much the same as those of the agreement which survives to this day and is now drawn into question before this court. Briefly, the publishing house agreed to pay the clerk for furnishing to them copies of the opinions of the Supreme Court promptly after their promulgation. These copies were not required to be authenticated or certified, and were paid for during the

period here concerned at the rate of twenty-five cents per opinion copy page. The method of preparing the copies in the early days is not known and is of no consequence. During the tenure of the three defendants in this action the copies sent to West were manifold copies not personally prepared by the defendants.

"Until the accession to office of the defendant, Edna J. Hinman, it was assumed by everyone concerned that the arrangement was a purely private transaction between the publishing company and the various clerks of the court, the payment being made to recompense the clerk for his time and efforts. The arrangement was known to and approved by the Supreme Court of the State of Montana throughout this period of more than seventy-five years, and the publishing company periodically sought and received the court's approval of the continuance of the system. A sample taken at random from the Montana Reports will quickly show that the sums of money paid during any given period could not have been large and probably were small recompense to the clerks for the inconvenience involved.

"The defendant Hinman, upon taking office on January 7, 1957, began remitting to the State Treasury the checks sent her by the West Publishing Company as a part of the receipts of her office. Since the only statute under which payment could conceivably be contemplated demands a payment closer to forty-five than twenty-five cents a page, the entire system was questioned, and the institution of this action was the eventual and inevitable result.

"The Legal Question

"This court is called upon to decide whether, first, the Clerk of the Supreme Court is required by law to charge the fee set by statute for the making of the copies above-described, and, second, if not so required, must the Clerk deposit any monies received for this service in the State Treasury?

"The disposition of fees paid to clerks of court is gen-

erally, in the United States, governed by statute. Fee schedules themselves are, of course, statutory. Statutes therefore usually define with some particularity the duties demanded of the Clerk, the fees, which must be charged for these services, and the disposition of such fees. The right of the state to monies collected depends upon some legislative enactment clearly identifying them as compensation owing to the state. In this connection see [State ex rel.] McNary v. Dunbar, 53 Ore. 45, 98 P. 878, 20 L.R.A. (n. s.) 1015; Richardson v. Morrison, 101 Cal.App. 418, 281 P. 726.

"The duties of the Clerk of the Supreme Court in Montana are set out in section 82-504, R.C.M.1947, which provides:

" '*Duties.* It is the duty of the clerk to keep the seal of the supreme court, its records and files, and the roll of attorneys and counselors at law; to adjourn the court from day to day at the beginning of any term, in the absence of any judge, and until the arrival of a majority of their number; to file all papers or transcripts required to be filed by law; to issue writs and certificates and approve bonds or undertakings when so required; to make out all transcripts to the supreme court of the United States; to make copies of papers or records when demanded by law, or the rules of the court, and to perform such other duties as may be required of him by the supreme court.'

"The fees to be collected by the Clerk of the Supreme Court are enumerated in section 82-503, R.C.M.1947, as follows:

" '*Fees.* He must collect in advance the following fees: For filing the transcript on appeal, in each civil case appealed to the supreme court, ten dollars ($10) payable by the appellant, and five dollars ($5) payable by respondent, at the time of his appearance, in full for all services rendered in each case, up to the remittitur to the court below; for filing petition for any writ, ten dollars ($10), in full for all services rendered in each cause; for certificate of admission as attorney and counselor, five dollars ($5); for making transcripts,

copies of papers or record, fifteen cents (15¢) per folio; for comparing any document requiring a certificate, five cents (5¢) per folio; for each certificate under seal, one dollar ($1.00).

" 'All fees collected by him must be paid into the state treasury, all of which shall be credited to the credit of the state law library fund.'

■ "Under Section 82-504, supra, the State is clearly entitled to any monies collected by the clerk while acting in his official capacity and performing the duties therein enumerated and the converse is equally true that the State is not entitled to any fees except those set by law. See In re Kaindl's Estate, 348 Ill.App. 300, 108 N.E.2d 825; Valley Nat. Bank of Phoenix v. Carrow, 71 Ariz. 87, 223 P.2d 912.

■ "It seems apparent that the opinion copies here in question are not "demanded by law, or the rules of the court", since there is no such command directed to the clerk either in the Revised Codes or the Rules of the Supreme Court, and our Supreme Court has interpreted this language as requiring such a direct command. See Montana Ore Purchasing Co. v. Boston and Montana Consolidated Copper and Silver Mining Co., 33 Mont. 400, 84 P. 706. Courts of other states have held that the Clerk of Court may lawfully refuse to perform any services not specifically demanded by law or rule of court as they are not part of his official duty. See Moore v. Sheppard, 144 Tex. 537, 192 S.W.2d 559; Ex parte Brown, 166 Ind. 593, 78 N.E. 553

"Section 82-503, supra, requires that the Clerk charge 15¢ per folio ' * * * for making transcripts, copies of papers or record * * *' The next question is whether this charge is to be made only for those copies made by the Clerk as part of his official duties, and specifically demanded by law or rule of court, or extends to such copies made by the clerks, voluntarily or officially.

"This query has been answered frequently, vigorously, and

unanimously by the American courts. These courts, state and federal, have always held that no charge need be made for such voluntary unofficial services, and that any compensation received was personal compensation to the Clerk and not the State treasury. The question has most frequently arisen in precisely the manner that brought about this case, and the majority of the decisions involve payments made by the West Publishing Company.

"A typical decision involved the Clerk of the Indiana Supreme Court and the remuneration paid by this same company. The fee statute there in controversy (Sec. 7798, Burns' Ann. Stat.1901) was essentially identical with our own. The Clerk invoked the court's jurisdiction to determine whether he must charge the amount set out in the fee statute for the same service involved in this case. The court said:

" 'It appears that the copies which the clerk, prior to January 1, 1906, furnished to said company and those which he is ready and willing to continue to supply, are nothing more than uncertified carbon copies which are prepared at the same time and as a part of the same work of making copies of the court's opinions to be certified to the lower court from which the appeal in each particular case has been taken. For the copies certified down the maximum rate is taxed and charged for the benefit of the State, to which is added the fee prescribed for the certificate and attestation by the seal of the court. These carbon copies which are furnished to the West Publishing Company are in no manner authenticated by the certificate of the clerk under the seal of the court. They may possibly with propriety be termed a by-product or matter arising out of the typing of the copies certified to the lower courts. * * *

" 'It is evident, and certainly beyond successful controversy, that the legislature, in authorizing the clerk of this court to charge a fee of ten cents per one hundred words for every copy of record or other paper, meant and intended a

certified copy, one duly authenticated as required by law. It certainly did not intend or in any sense mean an unofficial or uncertified copy, a document or paper which could have no legal effect or standing whatever as legitimate evidence or proof of any fact. Such a copy, generally speaking, would be of no particular use or value. What the legislature meant and intended was a duly authenticated copy, as required by the provisions of the law and the decisions of the court to which we have referred. 24 Am. and Eng. Ency. Law, 200, 208. The words ''copy of any record or paper on file'' contained in the statute, as generally construed, or interpreted, mean a certified copy. This interpretation the authorities fully sustain. In Muirhead v. United States, (1877) 13 Ct.Cl. 251, 256, the court, in construing a federal statute in regard to supervisors of election, said: ''the words 'copy of any paper on file' mean a copy certified and issued by the supervisor as a copy.'' See also Sweet's Law Dict. p. 208.' '' Ex parte Brown, 166 Ind. 593, 78 N.E. 553.

''This limitation of the term 'copies of papers or record' to the certified, authenticated copies demanded by law or rule of court is recommended by legal reasoning and common sense and is accepted by all of the courts which have had the question before them and by the writers of the standard legal texts. See Moore v. Sheppard, 144 Tex. 537, 192 S.W.2d 559; State ex rel. Hall v. Richardson, 129 Kan. 806, 284 Pac. 367; Blackwater Drainage District v. Borgstadt, 162 Mo.App. 151, 144 S.W. 888; Werner v. Hillman Coal & Coke Co., 300 Pa. 256, 150 A. 471, 70 A.L.R. 967; 14 C.J.S., Clerks of Courts, p. 1228, § 15; 10 Am.Jur., Clerks of Courts, p. 947, § 10.

''Having determined that the clerk need not make a charge under Section 82-503, R.C.M.1947, for issuing these uncertified and unauthenticated copies, we must next turn to the question whether, if any charge is made, it must be paid into the state treasury by the Clerk, under Section 82-505, R.C.M. 1947. That section provides:

'' '   \*   \*   \*   the full amount of all fees collected or chargeable, and accruing in causes brought into court for services rendered therein up to the time of each settlement   \*   \*   \* His salary must not be allowed or paid until all fees so accruing, and for which he is chargeable, have been accounted for and paid over.' Emphasis supplied.

''The Clerk of the Supreme Court is paid a salary under Section 25-501, R.C.M.1947, which is to compensate him 'for all services required of him *or which may hereafter devolve upon him by law.*' [Section 25-501.1]. This does not preclude him from receiving compensation for services he may provide which are not required by law. The general rule of law is stated in 67 C.J.S., Officers, p. 326, Sec. 88:

'' '\*   \*   \* an officer is not obliged, because his office is salaried, to perform all manner of public service without additional compensation, and for services performed by request, not part of the duties of his office, and which could have been as appropriately performed by any other person, he may recover a proper remuneration.'

''This question, again involving the Clerk of the Supreme Court and the West Publishing Company, in an identical fact situation, was before the Supreme Court of Texas in 1946 in the case of Moore v. Sheppard, 144 Tex. 537, 192 S.W.2d 559. The court summed up the situation in this manner;

'' 'The indebtedness referred to, and which presents the sole issue here, consists of money received by petitioners for furnishing uncertified and unofficial copies of opinions of their respective courts. It is undisputed that such money was received and was not deposited in the State Treasury, but was retained by petitioners individually. The precise issue is, therefore, whether the petitioners must account to the State Treasurer for the sums of money they have collected for uncertified, unofficial copies of opinions.'

'' '*There being no statutory duty requiring petitioners to furnish uncertified unofficial copies of opinions of the Courts*

*of Civil Appeals, no statute fixing any fee for such services, and no valid statute requiring that money received therefor be deposited in the State Treasury, there is no debt owing by petitioners to the State.* Since petitioners are not required to account to the State Treasurer, under the existing statutes, for such receipts, they cannot be required to execute an affidavit that such funds have been deposited in the State Treasury as a condition for the delivery of their monthly salary warrants.'

''The Moore case is the latest word on the matter, completing an unbroken series of decisions covering many states and many years. However, the justice of a claim such as this was dealt with many years ago by the Supreme Court of the United States in the case of United States v. Hill, 120 U.S. 169 [7 S.Ct. 510, 30 L.Ed. 627], where it was said:

'' '* * * The agreed statement of facts shows that this course has been pursued; that the district judge has examined and certified the accounts, knowing that they did not include naturalization fees; and that those accounts have been revised on their merits by these accounting officers, for this long series of years, and had been examined and adjusted by them with the naturalization fees not included. With this long practice, amounting to a contemporaneous and continuous construction of the statute, in a case where it is doubtful whether the statute requires a return of the disputed fees, judges of eminence, heads of departments, and accounting officers of the Treasury having concurred in an interpretation in which those concerned have confided * * *; and the semiannual accounts of the principal having been actually examined at the Treasury, with the naturalization fees excluded, down to and including the one last rendered five months before this suit was brought, a court seeking to administer justice would long hesitate before permitting the United States to go back, and not only as against the clerk, but as against the surety on his bond, reopen what had been settled with such

abundant and formal sanction. This principle has been applied, as a wholesome one, for the establishment and enforcement of justice, in many cases in this court, not only between man and man, but between the government and those who deal with it, and put faith in the action of its constituted authorities judicial, executive and administrative.'

"The law in this case is abundant and clear. It demands that judgment be rendered for the defendants in this action, who have served well and faithfully in the public offices of this state for a great span of years with unquestioned fidelity. This court must and does declare that these defendants are not indebted to the Treasury of the State of Montana.

"The defendants will prepare proposed Findings of Fact, Conclusions of Law and Judgment."

On November 23, 1959, District Judge Victor H. Fall made, rendered, filed and caused to be entered his Findings of Fact, Conclusions of Law and Judgment in Cause No. 27009, being as follows:

"Findings of Fact, Conclusions
of Law and Judgment

"Heretofore the plaintiff herein filed his complaint and thereafter the respective counsel for the defendants filed separate answers herein and thereafter the plaintiff filed his reply to the separate answers and thereafter all parties to the action filed their separate motions for judgment on the pleadings and briefs in support thereof, the plaintiff appearing in person and by his First Assistant, William F. Crowley, and the defendant, Edna J. Hinman appearing by Messrs. Toomey & Hughes, the defendant, Frank Murray, appearing by H. C. Hall and Ralph J. Anderson and the defendant, J. Ward Crosby, appearing by Ralph J. Anderson and the court having considered the brief in support of the respective motions there being no dispute raised by the pleadings on questions of fact but only as to conclusions of law and the court being advised in the premises now finds and decides:

"1. That about seventy-five years ago the West Publishing Company of St. Paul, Minnesota, which is a publisher of decisions of the various courts of the United States, including the decisions of the Supreme Court of Montana, being desirous of having prompt and accurate copies of the decisions of the Montana Supreme Court entered into an arrangement with one of the earliest occupants of the office of the Clerk of the Supreme Court designed to accomplish that purpose, the exact details of that transaction in territorial times have not survived but for more than one-half a century the Publishing House agreed to pay to the clerk for furnishing to them copies of the opinions of the Supreme Court promptly after their promulgation. These copies were not required to be authenticated or certified and were paid for during the period here concerned at the rate of twenty-five cents per page opinion copy. During the tenure of the three defendants in this action the copies sent to the West Publishing Company were manifold carbon copies not personally prepared by the defendants or either of them.

"2. That until the accession to the office of the defendant, Edna J. Hinman, it was assumed by everyone concerned that the arrangement was a purely private transaction between the West Publishing Company and the various clerks of the Supreme Court, the payment being made to recompense the clerk for his time and efforts. The arrangement was known to and approved by the Supreme Court of the State of Montana throughout the period of more than seventy-five years. The Publishing Company periodically sought and received the court's approval of the continuance of the system.

"3. That the defendant, Edna J. Hinman, upon taking office on January 7, 1957, began remitting to the State Treasurer the checks sent her by the West Publishing Company as a part of the receipts of her office.

"4. That the only statute applicable with reference to fees of the clerk of the Supreme Court is section 82-503, R.C.M. 1947, which reads as follows:

" '*Fees.* He must collect in advance the following fees: For filing the transcript on appeal, in each civil case appealed to the supreme court, ten dollars ($10) payable by the appellant, and five dollars ($5) payable by respondent, at the time of his appearance, in full for all services rendered in each case, up to the remittitur to the court below; for filing petition for any writ, ten dollars ($10), in full for all services rendered in each cause; for certificate of admission as attorney and counselor, five dollars ($5); for making transcripts, copies of papers or record, fifteen cents (15¢) per folio; for comparing any document requiring a certificate, five cents (5¢) per folio; for each certificate under seal, one dollar ($1).

" 'All fees collected by him must be paid into the state treasury, all of which shall be credited to the credit of the State law library fund.'

"Conclusion of Law

"From the foregoing facts the court concludes that the charges collected by the various clerks of the Supreme Court for supplying West Publishing Company with carbon copies, uncertified and unauthenticated are not such fees coming within the purview of the applicable statutes of the State of Montana belonging to the State of Montana and that the former clerks of the Supreme Court or the present clerk are not bound to account to the State of Montana or deposit in the treasury of the State of Montana such charges as are paid by the West Publishing Company to the clerk of the Supreme Court of the State of Montana and that the defendants herein, all being former clerks of the Supreme Court, are not now bound to account to the State of Montana for any such collections made from the West Publishing Company or any other person for uncertified and unauthenticated carbon copies of the opinions of the Supreme Court.

"Let Judgment be entered accordingly.

"Now Therefore, in consideration of the premises and the

Findings of Fact herein made and the Conclusions of Law drawn therefrom;

"It Is Ordered, Adjudged and Decreed that this Court does hereby declare that the defendants and each of them and all of them and the Clerk of the Supreme Court is not bound or accountable for any charges collected for supplying carbon copies of the opinions of the Supreme Court and that such charges, if any collected, for such services are the property of the Clerk of the Supreme Court collecting such charges and the Attorney General of Montana is denied any authority to bring action to collect such charges."

This court approves of the above-quoted opinion, findings of fact, conclusions of law and judgment.

Timely motion was made to dismiss this appeal upon the ground that the appellant, Edna J. Hinman, is not a party aggrieved by the judgment that was entered in the trial court which ordered, adjudged and decreed that she "is not bound or accountable for any charges collected for supplying copies of the opinions of this Court, and that such charges, if any, collected for such services are the property of the Clerk of the Supreme Court collecting such charges and that the Attorney General is denied any authority to bring action to collect such charges."

The appellant, Edna J. Hinman, concluded her answer filed in the District Court with prayer for "judgment that this action be dismissed upon the merits as to her" and it was so adjudged. She was granted the precise judgment for which she prayed. Her prayer was answered. She is not a party aggrieved by the judgment entered. She won her suit in the trial court. Her specifications of error on her appeal are wholly without merit. The trial court's judgment is affirmed.

MR. JUSTICE BOTTOMLY concurs.

MR. JUSTICE ANGSTMAN concurring:

I concur in the foregoing opinion of Mr. Justice Adair, but desire to add that since the attempted appeal is by one not aggrieved, the reason I concur in the balance of the opinion rather than urging a dismissal of the attempted appeal is because of the public interest involved.

I express no opinion as to whether the rule should apply to the present Clerk, since he was not a party to the proceedings, and the issue as to him was not involved in the case.

MR. CHIEF JUSTICE HARRISON dissenting:

I cannot subscribe to several matters contained in the foregoing opinions. The majority opinion approves the opinion, findings of fact, conclusions of law and judgment entered in the district court; this I cannot do. I realize that several of the matters to which I shall call attention were pleaded by one or more of the parties to this cause and not denied by the others, but since they have to do with administrative matters of this court and as such within the personal knowledge of the writer, where they do not conform to the facts I believe it should be pointed out.

Taking first the statement that the furnishing of opinions of this court was assumed to be a purely private transaction between the publishing company and the clerks of court, and that the arrangement was known to and approved by the supreme court, and that the publishing company periodically sought and received the court's approval of the continuance of the system.

I cannot speak with regard to any arrangements prior to my assuming the office of Chief Justice, but I do know what the practice and procedure has been since January 7, 1957, and I desire to set forth how the matter has been and is now being handled under my administration.

The West Publishing Company publishes the Pacific Reporter which undertakes to print the official opinions of courts of last resort of 13 western states, including Montana. This

firm prints what is called an Advance Sheet, which is a paper-bound publication issued every week and when a sufficient number of opinions have been published to fill a full volume it then publishes a permanent bound volume. The publishing company furnishes each justice of our court with a copy of each Advance Sheet in order that the members of the court might read the opinions and note any errors that they may be corrected prior to the printing of the bound permanent volume. This the court does on each opinion.

The Pacific Reporter is either subscribed to or available through a legal library to practically every attorney in Montana and is relied on by the legal profession of the United States as containing a correct copy of every opinion of this and other courts of the western states therein covered. Our court is naturally very interested in having a prompt and accurate record made of its opinions, and we desire to co-operate with the publisher to that end. Our court cites the Pacific Reporter in each instance as well as our own State Report.

Shortly after taking office I received a communication in my capacity of Chief Justice from the West Publishing Company, asking me if the arrangement for furnishing copies of the court's opinions then existing would be followed under my administration. At that time I had no knowledge that any payment was made by that company for the copies of opinions and assumed they were furnished as a courtesy by the clerk's office, so I immediately advised them there would be no change and copies of our opinions would be forwarded to them as they were issued. Some time elapsed without incident until Mrs. Edna Hinman, then the clerk of the supreme court, advised me that some question had arisen following an examination of her accounts by the state examiner's office by reason of the fact that she had remitted to the state treasurer the payments received in her office from the West Publishing Company. At that time she advised me that she had thought that all receipts were state property and as such should be paid over to the

State of Montana through the treasurer's office. I agreed with her in that interpretation and told her that in my opinion no doubt could exist in that regard and that so far as I was concerned all future payments should be treated exactly as she had been doing, and she followed that procedure throughout her term of office.

It might be well at this point to state that the copies of the opinions furnished the publisher were prepared by the staff of the supreme court and when the original signed opinion is handed down a sufficient number of copies is furnished the clerk's office by the supreme court staff so that they can forward copies of the opinion to counsel and news media in order that the general public can become aware of the pronouncements of the court. I had requested the staff of this court to furnish sufficient copies to the clerk's office for these purposes and also directed the clerk's office to furnish copies of the opinions to the news reporting services located in the capital city which desired them, without cost, since I believe that the public is entitled to immediate information upon all actions taken by the court. Further, it would facilitate and ease the work of these news reporters if they could have a copy of the opinion available which could be taken by them to their office from which to prepare their news release, rather than read from the original opinion on file in the clerk's office and write their news release there, thereby only adding confusion, and if the opinion were lengthy it could result in inaccurate reporting, which would be detrimental not only to the court but to the public and legal profession. The supreme court staff also furnishes, without charge, a copy of each opinion to the publisher of the State Reporter, which is a multilithed publication which furnishes copies of the court opinions to its subscribers on a weekly basis and which covers only the opinions of our court. In return for this courtesy the publisher of the State Reporter furnishes each member of this court, and its staff, a

copy of its publication without charge, which is very beneficial to us.

I should also call attention to the fact that all the employees of the clerk's office are members of the staff of this court.

When Mrs. Hinman was succeeded by Mr. Thomas J. Kearney I discussed with him the furnishing of the copies of the opinions as above-outlined and directed him to follow the same procedure and to deposit the payments made by the West Publishing Company with the state treasurer. Mr. Kearney advised me that he would do so and for a period of time this practice was followed. However, I later was informed that the practice of depositing the payments with the treasurer had been discontinued. I discussed the matter with Mr. Kearney and he advised me that from some advice he had received from undisclosed sources he had become doubtful that he should deposit these payments with the state treasurer and that he had continued to hold them in his office, his advisers believing that they should remain there awaiting the outcome of this case. When I discovered this situation I directed Mr. Kearney to deposit the payments forthwith with the state treasurer in accordance with my previous directive, which he did, and then to clarify the situation so that no further doubt or controversy could arise I rescinded my previous arrangement with the West Publishing Company and entered into one whereby copies of the opinions would be furnished by the staff of this court, by whom they are prepared, and the payment therefor is received and by a member of the staff deposited with the state treasurer to the credit of the office of the clerk of this court.

I have always treated this matter as one within the administrative jurisdiction of the Chief Justice and the actions I have followed have been taken with that thought in mind, and I have not consulted with the other members of the court for that reason. From what I have related it will be seen that the court, as such, had not approved anything in connection with this matter, rather I have directed how it should be done.

The district judge in his opinion refers to section 82-504, R.C.M. 1947, as specifying the duties of the clerk of the supreme court and I call attention to the final words of that section: "* * * and to perform such other duties as may be required of him by the supreme court." I further call attention to section 82-502, R.C.M. 1947, which reads: "The clerk of the supreme court must perform such duties as are prescribed by law and the rules and practice of the court." Section 93-501, R.C.M. 1947, provides in part: "Every court has power: * * *.

"5. To control, in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every other matter appertaining thereto * * *."

There can be no question that the clerk of this court is required to perform such duties as may be required of him by this court which are laid down either in the law, the rules, or the practice. The clerk is the ministerial officer of this court and if it is to function properly his actions must be directed and supervised by the chief administrative officer thereof. The district judge's opinion would infer that we must provide a rule to require him to perform some service or point to a demand that he do so contained in the law. A fair interpretation of the statutes does not bear this out because specific mention is made of the "practice of the court." The practice of the court covers a multitude of directions which are given to the clerk and the employees of that office orally, by letter, memorandum, telephone, or otherwise, and we expect such directives to be promptly and efficiently handled, and I wish to say that they are and have been, since both clerks during my tenure of office have been most co-operative.

In my opinion Montana Ore Purchasing Co. v. Boston & Montana Consolidated Copper & Min. Co., 33 Mont. 400, 84 P. 706, does not hold to the contrary, nor is it any authority upon the matter in any way.

I can subscribe to the conclusion of the district judge that

the payments made by the West Publishing Company are not to be classified as fees as fees are presently defined in the law, but I do not subscribe to the conclusion that the former clerk, Mrs. Edna Hinman, ''or the present clerk are not bound to account to the State of Montana or deposit in the treasury of the State of Montana such charges as are paid by the West Publishing Company * * * or any other person for the uncertified and unauthenticated carbon copies of the opinions of the supreme court.'' These are matters entirely within the jurisdiction of the supreme court and we shall continue to direct the ministerial duties of our clerk to the end that this court may function and perform its duties under the Constitution and laws of Montana.

The words ''uncertified and unauthenticated'' copies of the opinions of this court have been frequently referred to in this proceeding as if they were nothing but sheets of paper of little value. Suffice it to say that these copies are duplicates of the original opinion and they are obtained from the most reliable sources, and any member of the legal profession knows that the publishing house requires a true and correct copy of the court's opinion for publication in its reporter for otherwise the publication would be worthless. In other words, in furnishing the copies of opinions both publisher and the court know they are accurate and correct copies and certification or authentication would serve no purpose.

Following the filing of this appeal two of the defendants in the district court action filed a motion to dismiss the appeal upon the ground that Mrs. Edna Hinman was not an aggrieved party within the meaning of section 93-8002, R.C.M. 1947, and was therefore without right to appeal from the judgment of the district court.

In the case of Griffith v. Montana Wheat Growers' Ass'n, 75 Mont. 466, 244 P. 277, 278, this court stated: ''* * * It is a general rule, of universal application, that to enable a party to appeal from a judgment or order he must have an interest

in the subject matter of the litigation which is injuriously affected by the judgment or order."

To the same effect is In re Bernheim's Estate, 82 Mont. 198, 266 P. 378, 381, 57 A.L.R. 1169, wherein this court said: "Augusta Bernheim having been awarded all she sought, she is not an aggrieved party and has no right of appeal."

There would appear to be no reason why the same rule should not apply to declaratory judgment actions. In 16 Am.Jur., § 76, p. 341, it is stated: "* * * In accordance with the fundamental rule that to be entitled to appeal a person must be aggrieved by the judgment, an appeal from a declaratory judgment will be dismissed where there is nothing in it prejudicial to the claimed rights of the appellant."

The crux of the situation to my mind is that something prejudicial to the rights of the appellant must appear in the judgment or she must be injuriously affected by it in order to be classified as an aggrieved party.

The pleadings in this cause, which contain the admissions and denials of the parties, are confusing because they infer that the arrangements for supplying the copies of this court's opinions were made by the clerks and the publisher and as before related such is not the fact so far as the defendant Hinman is concerned, who took office at the same time as the writer on January 7, 1957. The arrangements for furnishing the copies after January 7, 1957, were made between the publisher and the Chief Justice as heretofore recited.

It was the contention of the Attorney General that the defendant Hinman was responsible for 15 cents per folio, a page being about two and three-fourths folios, whereas she had received from the publisher and paid into the state treasury but 25 cents per page, being the amount paid by the West Publishing Company. Mrs. Hinman's contention was that she made no copies of opinions for the publisher, that they were prepared by persons other than those employed in her office and therefore she was not required by section 82-503, R.C.M. 1947, being

the statute specifying the fees of the clerk of the supreme court, to collect 15 cents per folio and that she could accept 25 cents per page paid by the publisher; that she had accounted for all the money paid to her by the publisher by paying it over to the State of Montana and therefore the Attorney General could make no claim on behalf of the state against her for the contended difference between 15 cents per folio and 25 cents per page nor proceed against her to require that she make such additional payment. She then alleged there was no justiciable controversy existing between the Attorney General and herself and that the action should be dismissed. In her prayer, she likewise prayed that the action be dismissed upon the merits as to her.

Thereafter, she filed a motion for judgment on the pleadings upon the ground that no material issues of fact were presented or raised by the pleadings and that she was entitled to judgment in her favor as a matter of law on the pleadings alone. The court granted her motion.

While appellant contends that the judgment was adverse to her in that no declarations were made as to certain issues raised by her answer, the fact remains that she was not, in my opinion, aggrieved by the judgment since it was favorable to her and entered upon the granting of her own motion. In my opinion, the motion to dismiss this appeal which has been filed in this court is well-taken and should be granted.

I wish to make it clear that nothing heretofore said with regard to the manner of furnishing copies of the court's opinions to the publisher has any significance as to the practice followed by previous administrative officers of this court or clerks prior to January 7, 1957. I have no personal knowledge of what arrangements were made or by whom.

Since the findings of the district court as to the practice and procedure of this court and the clerk are erroneous subsequent to January 7, 1957, it follows that the conclusions of law based thereon and the judgment entered are likewise in

error in the same respect, in holding and declaring that any clerk of the supreme court subsequent to January 7, 1957, was not bound to account to the State of Montana for the payments received from the publisher and that the same were the clerk's property.

For this reason I do not concur in the affirmance of the trial court's judgment.

It is only fair to say that the district judge in making his findings, conclusions of law and judgment would have no knowledge of the facts subsequent to January 7, 1957, as set forth herein, since his knowledge would be limited to the allegations contained in the pleadings of the parties.

MR. JUSTICE CASTLES dissenting:

I concur in the opinion of Mr. Chief Justice Harrison, but I would go even further in rejecting the so-called facts as pleaded and found by the district court. I believe that matters connected with our own administrative duties are peculiarly within the court's own knowledge. While technically the motion to dismiss because the appellant Hinman is not an "aggrieved party" within the meaning of the statutes may be well-taken, the State of Montana should have concerned itself through the office of the Attorney General in bringing this important matter properly before the Court. To the extent that the majority opinion seems to approve of the practice of private sales by our own Clerk's office, of court opinions or anything else, I dissent.