No. 82-64

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

LOIS PLATZ, Clerk of Court,
Big Horn County, Montana,

Plaintiff and Appellant,

vs.

LORRAINE HAMILTON, Treasurer,
Big Horn County, Montana,

Defendant and Respondent.

---

Appeal from: District Court of the Thirteenth Judicial District,
In and for the County of Big Horn
Honorable Robert Wilson, Judge presiding.

Counsel of Record:

For Appellant:

Robert J. Emmons argued, Great Falls, Montana

For Respondent:

James E. Seykora, County Attorney, argued, Hardin,
Montana

---

Submitted: September 16, 1982

Decided: November 4, 1982

Filed: NOV 4 - 1982

Thomas J. Kearney
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Lois Platz, clerk of the District Court of Big Horn County, appeals from a summary judgment in favor of the county treasurer, Lorraine Hamilton, entered in the District Court, Thirteenth Judicial District, Big Horn County.

Lois Platz filed an action for declaratory judgment to determine whether a clerk of District Court is required to remit to the county treasurer the fees collected by the clerk in the issuance and execution of passports. Platz alleges that a clerk of court should be allowed to retain the execution fee for his or her personal use.

Because no genuine issue as to any material fact existed, both parties moved for summary judgment under Rule 56, M.R.Civ.P. The District Court granted Hamilton's motion for summary judgment, and thereby required the clerk of court to remit the fee to the county treasurer.

The United States Congress has the exclusive authority to regulate the issuance and execution of passports, and has exercised that authority by enacting 22 U.S.C. 211a, et seq. It also implemented federal regulations which designate persons before whom passport applications can be executed and oaths can be administered. These persons include, among others, state clerks of court of record, state judges, clerks of probate courts, and post office personnel. 22 C.F.R. § 51.21(b). The execution of passports is not, however, a mandatory function imposed upon these public officials by the Congress. Any of the designated officials could refuse, without violating a duty of office, to handle passport applications.

The federal statutes and regulations also state that two fees can be collected. The first is a $10 passport fee

-2-

which must be paid to the United States Treasury.  22

U.S.C. § 214.  The collection of this passport fee is not

disputed by the parties in this case.  The second fee, which

is the center of this dispute, is a $5 execution fee which

"may be collected and retained by any State official before

whom an application is executed."  22 C.F.R. § 51.61(b).

Platz contends that she should be allowed to retain this

execution fee for her personal use. Hamilton, conversely,

contends the execution fee should be remitted to the county

general fund.

In Montana, no specific statute exists which imposes an

official duty upon a clerk of District Court to execute

passport applications.  Nor is there a specific Montana

statute which requires that an execution fee collected by a

clerk of District Court be paid over to the county treasurer.

The legislature did, however, enact a general statute

relating to the collection of fees, which states in part:

> "No salaried county officer may receive for his
> own use any fees, penalties, or emoluments of
> any kind, except the salary as provided by law,
> for any official service rendered by him."
> (Emphasis added.)   Section 7-4-2511(2), MCA.

In 1972, Attorney General Woodahl issued an opinion

interpreting this statute in light of execution fees.  He

stated, "There being no statutory duty imposed upon the

clerks of court concerning the issuance of passports, it

is not a duty of their office for which they are regularly

compensated . . .  Therefore,. . . the . . . fee collected

for issuing passports may be retained by the clerks of court

in the various counties of the state, and the clerks of

court are not required to deposit the same with the county

treasurer for deposit in the county general fund." 34 Opinion

of Attorney General (1972), 41.

In 1979, Attorney General Greely reversed the 1972 opinion, finding that the execution of passports was an "official service" as used in section 7-4-2511(2), MCA. He stated, "The fact that a state official performs a function under federal rather than state law does not necessarily mean that he or she is not rendering an official service. When the individual is permitted to perform the function solely because of his or her official status, he or she renders an official service, regardless of whether the service is authorized by state or federal law." 38 Opinion of Attorney General (1979), 46. Therefore, the Attorney General concluded that county clerks of court must pay the execution fees to the county treasurer.

We do not agree with the latest Attorney General opinion. Instead, we would apply the rationale set forth in Anderson v. Hinman (1960), 138 Mont. 397, 357 P.2d 895. Anderson involved the question of whether the clerk of the Supreme Court could retain fees paid by West Publishing Company for copies of opinions of the Supreme Court. Anderson, who was then the attorney general, took the position that the fee paid by West Publishing Company was paid for an official duty of the clerk of the Supreme Court, and therefore the fee must be remitted to the State Treasury. The Supreme Court held, however, that the clerk of the Supreme Court could properly retain the fee for his or her own use.

The court in Anderson stated several reasons why the clerk was allowed to retain the fee. First, "[t]he right of the state to monies collected depends upon some legislative enactment clearly identifying them as compensation owing to the state." Anderson, 138 Mont. at 408, 357 P.2d at 901. To determine whether a clear legislative enactment existed, the court in Anderson reviewed the following two statutes:

-4-

"82-504 [R.C.M. 1947]. Duties. It is the duty of the clerk [of the Supreme Court] to . . . perform such other duties as may be required of him by the supreme court.

"82-503(2) [R.C.M. 1947]. Fees. All fees collected by [the clerk of the Supreme Court] must be paid into the state treasury, all of which shall be credited to the credit of the State law library fund."

In light of these statutes, the court could find no legislative enactment clearly identifying fees paid by West Publishing Company to the clerk as compensation owing to the state.

In the present case, no state statute exists which imposes a duty upon a clerk of District Court to execute passport applications. Nor is there a statute which clearly requires the clerk to remit the execution fee to the county treasurer. Therefore, there is no "legislative enactment clearly identifying [monies collected] as compensation owing to the State." supra.

Anderson stated a second reason why clerks should be allowed to retain the fee: "Under Section 82-504, supra, the State is clearly entitled to any monies collected by the clerk while acting in his official capacity and performing the duties therein enumerated and the converse is equally true that the State is not entitled to any fees except those set by law." Anderson at 409, 357 P.2d at 901. In the present case, the State has not provided for the disposition of execution fees, even though Congress gave the State the power to do so. 22 U.S.C. § 214. Therefore, the State has not "set by law" any fee relating to the execution of passports.

A third reason stated in Anderson is that a function performed by a clerk must be "demanded by law." Anderson at

-5-

409, 357 P.2d at 902.   In the present case, a clerk of District Court is not "demanded by law" to execute passports applications.   By federal law, the clerk of the District Court is merely authorized to execute passport applications. 22 C.F.R. § 51.21(b).   Mere authorization to perform an act does not impose a mandatory duty upon a public official.   If a statute is permissive, as the federal regulation is here, there is no "clear mandatory duty" to perform the function enumerated by the statute.   Dreyer v. Board of Trustees (1979), ___ Mont. ___, 598 P.2d 205, 209, 36 St.Rep. 1396, 1401.

Fourth, the court in Anderson stated that "an officer is not obliged, because his office is salaried, to perform all manner of public service without additional compensation, and for services performed by request, not part of the duties of his office, and which could have been as appropriately performed by any other person, he may recover a proper remuneration."   Anderson at 412, 357 P.2d at 903, quoting 67 C.J.S. Officers, 326, § 88.   When executing passport applications, a clerk of District Court is performing a discretionary act.   It is not "part of the duties of his office," as prescribed in sections 3-5-501 to 3-5-515, MCA, to execute passport fees.   In addition, many other persons, including post office personnel, may execute passport applications.   Therefore, the clerk of District Court "may recover a proper remuneration."

Finally, the court in Anderson emphasized that where there is no state statute fixing a fee, no debt is owing to the State Treasury.   Anderson at 412-413, 357 P.2d at 903. Because Congress has imposed the supremacy clause, Art. VI,

Clause Two of the United States Constitution, in the area of passports, the State cannot fix a fee for execution of passport applications. The state legislature can, however, provide that any fee collected for the execution of applications shall be paid to the county treasurer. In Montana, the legislature has failed to enact a specific statute with regard to execution fees. Therefore, no debt is owed by the clerks to the county treasurer for execution fees in passport cases.

We hold that since the execution of passport applications is not an official duty imposed upon a clerk of District Court by state statute, and since the legislature has not enacted a specific statute with regard to the disposition of execution fees, the clerk has no duty to remit the fees to the county general fund. The summary judgment of the District Court is reversed, with instructions to enter summary judgment in favor of the clerk-appellant.

_____
John C. Shelby
Justice

We Concur:

_____
John Conway Harrison

_____

_____

_____
Justices

-7-

Mr. Justice Daniel J. Shea dissenting:

I would affirm the trial court's judgment requiring the county clerk to remit the passport fees to the county treasurer. The clerk collects the passport fees during business hours, county time is used, county personnel is used to process the applications, county equipment is used and presumably county postage is used to mail the passport applications to Seattle for final processing. The service is rendered by the clerk solely because of the clerk's official status.

I agree with the opinion of the Attorney General which held that:

> "The fact that a state official performs a function under federal rather than state law does not necessarily mean that he or she is not rendering an official service. When the individual is permitted to perform the function solely because of his or her official status, he or she renders an official service, regardless of whether the service is authorized by state or federal law." 38 Opinion of Attorney General (1979) at 46.

The clerks collect the fees under color of their office. Absent a statute specifically allowing clerks to retain the fees, the fees should be turned over to the county treasurer. When the clerks took office they did so on the assumption that their compensation was governed by section 7-4-2503, MCA. This statute does not permit the clerks to also collect compensation in the form of passport fees.

Daniel J. Shea
_____
Justice

-8-