No. 14705

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

ELMO DREYER and JUDSON TOWNLEY, et al.,

        Applicants and Appellants,

-vs-

THE BOARD OF TRUSTEES OF MID-RIVERS
TELEPHONE, INC., et al.,

        Respondents and Defendants and
        Cross Appellants.

Appeal from:  District Court of the Seventh Judicial District,
           Honorable L. C. Gulbrandson, Judge presiding.

Counsel of Record:

    For Appellants:

        Moses, Tolliver and Wright, Billings, Montana

    For Respondents:

        Church, Harris, Johnson & Williams, Great Falls, Montana

Submitted on briefs: June 29, 1979

Decided: AUG 1 1979

Filed: AUG 1 1979

_Thomas J. Kearney_
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

This is an appeal by Elmo Dreyer and Judson Townley, the applicants above named (Dreyer and Townley) and a cross-appeal by the Board of Trustees of Mid-Rivers Telephone Cooperative, Inc., and the remaining respondents above named (collectively "Mid-Rivers") from certain of the orders contained in the judgment and decree of the District Court, Seventh Judicial District, McCone County, Montana, dated October 23, 1978.

Mid-Rivers is a rural telephone cooperative incorporated under the "Rural Electric and Telephone Cooperative Act" (Ch. 18, Title 35 MCA). The cooperative consists of approximately 5,000 member-patrons residing in some eighteen counties of eastern Montana. It is claimed that the cooperative serves an area of more than 22,000 square miles and is geographically the largest telephone cooperative in the world.

Respondents are the trustees of Mid-Rivers, the cooperative itself, and its individual officers and trustees.

Dreyer and Townley brought an action for themselves individually, as representatives of and on behalf of themselves and all other members of Mid-Rivers. In a six-count application for relief in the District Court of McCone County, they sought from the District Court:

COUNT I. To redistrict the existing residence districts of the cooperative used for establishing the residency qualifications of trustees of the cooperatives board.

COUNT II. To require that notice be given of a special meeting of the members of the cooperative in response to a petition asking for such a meeting signed by certain members of the cooperative.

COUNT III. To require the cooperative to hold an annual meeting of the membership in Circle, Montana rather than Winnett, Montana.

-2-

COUNT IV. To restrict payment of fees and expenses paid to the respondent board members for their attendance at meetings of the board within or without the state of Montana.

COUNT V. To require the cooperative to conduct the election of trustees of the cooperative on a voting district basis.

COUNT VI. To declare the compensation and expenses previously paid to the respondent board members to be illegal and to require an accounting in repayment and the same to the cooperative and to hold that the 1976 and 1977 elections of the trustees were illegal and that the trustees were illegally elected.

Dreyer and Townley sought a writ of mandamus from the District Court as to the first five counts. The issues with respect to count six were reserved by the District Court until the issues under the first five counts are finally decided. The October 23, 1978 judgment and decree of the District Court confirmed the court's earlier dismissal of the application with respect to counts one and two; kept in force an alternative writ of mandate with respect to count three; requires the cooperative to hold its annual meetings at Circle, Montana, until such time as its bylaws are amended; and dismissed the application with respect to counts four and five.

Dreyer and Townley appeal from the adverse rulings on counts four and five. Mid-Rivers appeals from the adverse ruling on count three. Under Rule 23(h), Mont.R.App.Civ.P., Dreyer and Townley are regarded as appellants before this Court and Mid-Rivers collectively as respondents.

After the start of the lawsuit by Dreyer and Townley, Mid-Rivers did on the 91st day before the planned 1978 annual meeting, redistrict the five areas in an attempt to correct the inequities as to the number of members represented in each district. The redistricting was done through the use of telephone exchanges (telephone prefix numbers). The District Court ruled that Mid-Rivers had complied with the applicable provision of the bylaws

-3-

and dismissed count one. Dreyer and Townley do not appeal from that decision.

As to the second count, on the contention of Dreyer and Townley that Mid-Rivers had failed to call a special meeting when petitioned by more than 200 of its members, it was found that a bylaw provision of Mid-Rivers which allowed for the calling of a special meeting on a petition of more than 200 members, conflicted with a state statute which required that such a meeting could only be called by 10% of the members on petition. Ten percent of Mid-Rivers' members exceeds 200. Mid-Rivers took the position that they were therefore not required to call a special meeting as requested by the petition. Dreyer and Townley agreed with this position. The District Court dismissed count two, and no appeal was taken therefrom.

COUNT FOUR

Dreyer and Townley appeal from the order of the District Court dismissing their application and refusing mandamus relief as to count four. The contention of Dreyer and Townley on this count is that, contra to section 35-18-311 MCA, the trustees of Mid-Rivers, under Art. V, Section 7 of its bylaws, have authorized for themselves a $75 fee each plus expenses for attendance at all board meetings held within and outside of the State of Montana.

The applicable bylaw provides as follows:

"Section 7. Compensation. Directors [trustees] shall not receive any salary for their services as directors, except that by resolution of the Board a reasonable fixed sum per diem and expenses of attendance, if any, may be allowed for attendance at each meeting of the Board and for attendance at state, area, regional, national and other meetings on behalf of the Cooperative where attendance is authorized by the Board. No director shall receive compensation for serving the Cooperative in any other capacity, nor shall any close relative of a

-4-

director receive compensation for serving the Cooperative, unless the payment and amount of compensation shall be specifically authorized by a vote of the members or the service of such director or close relative shall have been certified by the Board as an emergency measure. Close relatives shall be deemed to include, but not necessarily limited to spouse, parent, children, brothers and sisters."

The pertinent statutory provision is section 35-18-311(2) MCA which provides:

"(2) Without approval of the membership, trustees shall not receive any salaries for their services as trustees and, except in emergencies, shall not be employed by the cooperative in any capacity involving compensation. The bylaws may, however, provide that a fixed fee and expenses of attendance, if any, may be allowed for attendance at each meeting of the board of trustees."

The District Court found on this point that at the annual meeting of September 21, 1977, an auditor's report was presented to the members which included the per diem and expenses paid to the trustees during the years 1976 and 1977 and that these financial reports were approved by a motion duly seconded and carried. The court found as a fact that the $75 per diem rate had been established under Art. V, Section 7 of the bylaws of the cooperative and approved by the members of the 1977 annual meeting as a proper payment.

Dreyer and Townley, in their appeal, do not quarrel with the idea that the past expenses or per diem paid to the trustees may have been ratified by the membership. They contend that prospective payments do not have the prior approval of the membership and that accordingly they are entitled to a mandate forbidding such possible prospective payments.

A careful reading of section 35-18-311(2) MCA discloses that (1) without approval of the membership, the trustees are not allowed to receive salaries for their services; but (2) an exception to the approval requirement occurs when the bylaws provide that a fixed fee and expenses of attendance may be allowed the trustees.

-5-

The language of the statute does not necessarily mean that the "fixed fee" must be set forth in the bylaw itself. Thus, if the bylaws of a telephone cooperative had provided, with respect to trustees, that "a fixed fee and expenses of attendance, if any, may be allowed for attendance at each meeting of the Board of Trustees," without more, such a provision could not be attacked as being against the statute because obviously it is in the language of the statute, even though the fixing of the fee would have to be done by the trustees, through a resolution. That is really what the situation is in this case. Art. V, Section 7 of the bylaws provides that "by resolution of the Board, a reasonable fixed sum per diem and expenses of attendance if any may be allowed for attendance at each meeting . . ." By that provision, the bylaws have provided for a "fixed fee and expenses of attendance." The further provision of the bylaws that such items should be fixed "by resolution of the Board" is simply a method for providing such fixed fees. We do not find therefore, that the bylaw provision offends section 35-18-311(2) MCA.

Thus, there is no clear legal duty on the part of the trustees to procure the prior approval of the membership to the resolution for reasonable fixed fees, since the bylaw provision of the statute is an exception to the approval requirement of section 35-18-311(2) MCA. Without a clear legal duty, mandamus does not lie. Cain v. Department of Health, Etc. (1978), _____ Mont. _____, 582 P.2d 332, 35 St.Rep. 1056.

COUNT FIVE

Under this issue, Dreyer and Townley contend that instead of cooperative-wide voting for trustees at any election, the cooperative should permit only voting for the respective trustees in voting districts, that is, district-wide voting.

-6-

Art. V, Section 1 of the bylaws of the cooperative provided for five districts, with each district to be represented by two trustees. The same section of the bylaws also provided that anytime not less than 90 days before any meeting of the members at which trustees were to be elected, the Board could redistrict or reconstitute the districts to make them nearly equal in number.

At the meeting of the Board of Trustees, on June 27, 1978, the Board redistricted the districts according to telephone exchanges (decided by prefix numbers). The court found that the redistricting had occurred 90 days before the proposed election of September 27, 1978.

Mid-Rivers contends that under the bylaws, a district plan is established to permit nominations of trustees from the respective districts, two for each district, but that voting for the trustees after the nominations have been made is to be on a cooperative-wide basis.

Dreyer and Townley contend that under the provisions of section 35-18-313 MCA, when the cooperative is divided into districts, these are "voting districts" and as such the statute requires that the trustees from each district shall be elected by the members residing therein.

The District Court concluded that section 35-18-313 MCA was not mandatory. It concluded that the districts were established as a means of enforcing the residence qualification of trustees or directors, and that section 35-18-313 MCA is not intended to mandate an exclusive manner in which districts can be used by a cooperative in the selection process of qualified trustees.

We conclude that the District Court was correct on this point. The statute involved is not mandatory by its terms. Section 35-18-313 MCA provides in pertinent part:

-7-

"Notwithstanding any other provisions of this chapter, the bylaws may provide [for voting districts] . . . and that in respect to each such voting district:

"(a)  a designated number of trustees shall be elected by the members residing therein;
. . ."

The permissive words "may provide" of the foregoing statute applies "in respect to each such voting district." No clear mandatory duty arises out of the language of the statute.  The District Court buttressed its conclusion by referring to section 35-18-103 MCA, which provides that the chapter respecting cooperative utilities is to be construed liberally and that "The enumeration of any object, purpose, power, manner, method, or thing shall not be deemed to exclude like or similar objects, purposes, powers, manners, methods, or things."

Further, we note that section 35-18-207 MCA, with respect to the bylaws of such a cooperative, states that the bylaws "may contain other provisions for the regulation and management of the affairs of the cooperative not inconsistent with this chapter . . ."  A bylaw which is at variance with a permissive provision of the statutes is not "inconsistent" so as to require voiding the bylaw provision.

We have found no case law directly in point with respect to these matters, nor has counsel for either side directed us to specific case law authority.  The statutes in themselves are clear enough so that our interpretation of the wording appears to be sound, and within the statutory direction for construction under section 35-18-103 MCA.

COUNT THREE

With respect to count three, Mid-Rivers is the cross-appellant, contending that the District Court erred in requiring meetings of the cooperative to be held in Circle, McCone County, Montana.

-8-

Here again, we face a matter of statutory interpretation. Section 35-18-303(3) MCA provides:

> "Meetings of members shall be held at such place as may be provided in the bylaws. In the absence of any such provision, all meetings shall be held in the city or town in which the principal office of the cooperative is located."

The principal office of the cooperative in this case is in Circle, Montana. The trustees proposed to hold the meeting of September 27, 1978 in Winnett, Petroleum County, Montana. Dreyer and Townley contend that this was improper. The District Court found such a proposed meeting place was improper and we agree.

Art. IV, Section 1 of the cooperative bylaws does not name the town in which the annual meeting of the members is to be held but does provide that the annual meeting shall be held at such place in the project area as shall be determined by the Board of Trustees. The District Court concluded that because the bylaws failed expressly to name the place in which the annual meeting is to be held, the statutory provision controls the place of meeting and it must therefore be held in Circle, Montana. Section 35-18-303(3) MCA, supra.

The District Court is correct on this point. As the District Court stated in its conclusions, nothing prevents the members of the cooperative from amending the bylaws so as to provide specifically for other places for the annual meeting.

The appeals of Dreyer and Townley are denied; the cross-appeal of Mid-Rivers is denied. No costs to either party.

_____
                    Justice

We Concur:

_____
        Chief Justice

-9-

*Tim C. Daly*

*Joe Conway Harrison*

*Daniel J. Shea*
                 Justices